# Exhibit 3

Hewlett Packard Enterprise

August 8, 2024

PERSONAL & CONFIDENTIAL

Brian Wheeler
Morpheus Data

Dear Brian,

On behalf of Hewlett Packard Enterprise Company ("HPE" or "the Company"), we are pleased to formally extend an offer to you to join the Company in the following role:

Job Title: Fellow
Job Level: Vice President

We hope you'll view this offer as an opportunity to further develop your professional career and help us innovate at HPE. Together we can create what comes next!

This offer is contingent on your continued employment in good standing with Morpheus Data until your first day with HPE (your "HPE start date"). Your HPE start date is expected to be October 16, 2024, contingent upon the successful close of HPE's acquisition of Morpheus Data (the "Merger"). For avoidance of doubt, in the event that the Merger is not consummated for any reason, this offer will be considered null and void.

Your employee number will be [redacted] If you are a rehired HPE employee, this number may change and you will be notified of this change in the coming weeks.

Effective as of your HPE start date, your initial annual base salary will be $370,000 to be paid in twenty-four (24) semi-monthly payments (less all applicable deductions and withholdings). Your paydays are expected to occur on the 15th and last day of the month, unless such date falls on a weekend or a company-observed holiday, in which case you will be paid on the workday immediately preceding the payday.

In addition to your base salary, you will be eligible to participate in the Company's Pay-for-Results (PfR) Annual Bonus Plan, and have a target bonus opportunity equal to 40% of your eligible earnings, with a maximum bonus opportunity equal to three times your bonus target, subject to the terms of the PfR plan's terms and conditions noted in the PfR Plan document (which are subject to modification from time to time). The bonus is discretionary and based on company, business unit, and individual performance. Your current fiscal year bonus, if any, will be calculated based on your eligible earnings from your date of hire through to the end of the fiscal year. The Company will deduct from the bonus any applicable withholding taxes or other deductions it is required to make by

law. For avoidance of doubt, your Morpheus Data cash incentive plans will conclude prior to your HPE start date and any earned amounts will be paid according to those plans' terms and conditions.

Except as otherwise stated herein, you will be ineligible for any unpaid amounts if your employment terminates for any reason prior to the payment date.

When you join HPE, you will be eligible to participate in the benefit programs that are generally afforded to HPE employees, subject to HPE's policies. These and any other benefit programs are subject to modification from time to time. Your HPE benefit programs will begin on your HPE start date. For detailed information go to ALEX for HPE.

You will receive credit for your continuous service with Morpheus Data in determining the rate at which you accrue vacation under HPE's vacation program, determining FMLA eligibility and for purposes of service awards. You will also receive service credit for purposes of vesting in matching contributions under the HPE 401(k) Plan and determining severance benefits under an HPE severance plan. Your service for all other HPE benefit and compensation programs will begin on your HPE start date.

You will be eligible for vacation in accordance with the Company's relevant policy and be eligible for 20 vacation days per year. Your 2024 allotment will be prorated for the months you are actually employed in 2024 (as measured from your HPE start date).

If applicable, this offer is contingent upon you obtaining work authorization and establishing a permanent address within the United States. A U.S. address must be provided to HPE within 30 days of your start date or this offer will be considered void. If you will need immigration assistance, please contact Fragomen, Del Rey, Bernsen & Loewy, LLP at 408-330-1172 or HPE@fragomen.com.

Further, if you are a foreign national with a visa from a restricted country, this offer is extended conditionally upon receipt of approval from HPE's Global Trade office. We do not anticipate to have received this approval by the time you will need to accept this offer, but we will inform you if and when this approval is obtained.

If you accept this offer as set forth above, you must also meet the following conditions to be eligible for employment with the Company:

*Background Screen*. This offer and your continued employment are contingent upon successful completion of the Company's background screen, which includes a criminal background check, verification of prior employment, verification of education, and other information required by Company policy or consistent with the Company's normal processes and procedures. If at any time during your employment with the Company, your position involves work on a customer account where a contract or customer requirement calls for an additional background screen (such as a drug screen), you will be separately notified of such requirements at that time. It is your decision whether to resign your present employment or take other actions in reliance of this offer until such time as you have successfully completed the background screen required for the offered position.

*Legal U.S. Work Authorization*. This offer is contingent upon your compliance with the Immigration Reform and Control Act of 1986 ("the Act"). In essence, the Act requires you to establish your identity and employment eligibility. If you accept this offer, you will be required to complete the Employment Eligibility Verification Form (I-9) prior to your start date. Additional information will be forthcoming.

HPE is an E-Verify employer. E-Verify is an Internet-based system that compares information from an employee's Form I-9, Employment Eligibility Verification, to data from U.S. Department of Homeland Security and Social Security Administration records to confirm the employment eligibility of all newly hired employees.

*Verification relating to export controls*: This offer and your employment are conditional upon the company obtaining satisfactory verifications relating to export controls for any job related technical data required for the position for which you are being hired.

*Personal Data:* HPE will process your personal information in the course of your employment with the Company. By accepting this offer of employment, you acknowledge you have received the Employee Privacy Policy which explains how HPE processes your personal information, including via HPE's IT and communication systems. This policy (as updated from time to time) is accessible from the footer of each HPE.com intranet page.

*Standards of Business Conduct*. If you accept this offer, you will be subject to the Company's Standards of Business Conduct ("SBC") and relevant policies. Adherence to the SBC and related policies, including subsequent changes, is required of all employees. Further, should you decide to accept this offer of employment, please be advised that the Company's SBC requires you to honor any agreements you have with your previous employers, including obligations regarding the disclosure or use of proprietary information (as applicable).

You can access and read the Standards of Business Conduct, US Drug policy and Employee Privacy Policy here:

SBC
US Drug Policy
Employee Privacy Policy

**Agreement Regarding Confidential Information and Proprietary Developments ("ARCIPD").** This offer and your employment are conditional upon your review and acceptance of the ARCIPD. Please review the ARCIPD, which is attached below.

**Arbitration Agreement.** This offer and your employment are also conditional upon your review and acceptance of the Mutual Agreement to Arbitrate Claims. Arbitration has become a common practice in many areas of business and HPE recognizes arbitration to be an effective way to resolve employment-related disputes. Please review the Mutual Agreement to Arbitrate Claims attached below.

**HPE Employee Letter of Assurance Agreement and Rules Regarding Obligations to Previous Employers and Other Third Parties.** This offer and your employment are further conditioned upon your acceptance of the HPE Employee Letter of Assurance Agreement and Rules Regarding Obligations to Previous Employers and Other Third Parties. Please review these documents attached below.

In addition, where applicable, this offer and your employment are conditional upon the Company receiving satisfactory references or background check results, medical reports and documentary evidence confirming that you are permitted to take up the position for which you are being hired in your local country. Please note that in the event the Company is not satisfied with any of these items, the Company reserves the right to withdraw or delay this offer of employment.

In addition, by accepting this offer, you confirm you are not bound by any restrictive covenant, non-competition agreement, non-solicitation agreement or other circumstance that would prevent you from accepting this position or limit your effectiveness from performing your role with the Company (as outlined herein). You agree that you either have not taken or have returned all confidential information (e.g., trade secrets, confidential business or technical information or know-how not generally known to the public) belonging to any previous employer or other third party and will not bring such information with you to the Company, nor will you use and/or disclose any such confidential information during the course and/or scope of your employment with the Company.

The Company complies with all applicable employment discrimination laws. This includes providing reasonable accommodation to qualified individuals as required by law. If you believe you need accommodations, please contact HPE People Care. You may also discuss the matter with your manager.

Please understand that your employment with the Company would be at-will, and as such, would be for an indefinite term and may be ended, with or without cause or prior notice, atm any time by either you or the Company. The at-will nature of your job may be changed only through a written communication to you from the Company's General Counsel. Other terms and conditions of employment such as job responsibilities or governing policies may be changed at the Company's discretion.

**For your acceptance to be valid, the Company must receive your reply indicating your acceptance no later than 5:00 pm CST on Tuesday, August 13, 2024. If your acceptance is not received by 5:00 pm CST on Tuesday, August 13, 2024, then this offer of employment will be considered null and void.**

All HPE new hires are required to successfully complete pre-employment screening. You will receive an email from HPE Human Resources with a link to complete your pre-employment screening profile and to provide your consent for First Advantage®, HPE's global employment screening vendor, to conduct your screening. Your timely completion of this process is critical.

We hope you will regard this letter as evidence of HPE's strong desire to have you join the Company. Let's build the future together!

Sincerely,



Fidelma Russo
EVP & GM, Hybrid Cloud and Chief Technology Officer
Hybrid Cloud & Office of the CTO

**Offer of Employment Acceptance**

Please provide your acceptance no later than **5:00 pm CST on Tuesday, August 13, 2024** or this offer of employment will be considered null and void.

To accept this offer of employment and agree to the above, please sign below and the five (5) attached agreements indicating your acceptance of offer and terms by typing your first and last name in the "Click here to sign" fields.

In accepting the Company's conditional offer of employment, I have read, understand and agree to the terms and conditions of Agreements and other documents attached, specifically the Mutual Agreement to Arbitrate Claims, HPE Agreement Regarding Confidential Information and Proprietary Developments, Rules Regarding Obligations Related to Previous Employers & Other Third Parties, and the HPE Employee Letter of Assurance Agreement.

Additionally, I have read, understand and agree to comply with the Company's Standards of Business Conduct ("SBC") and all related policies, including the U.S. Drug Policy, and acknowledge my responsibility to comply with the SBC and related policies following the commencement of my employment.

| | | |
|---|---|---|
| **Signature required:** | Brian Wheeler<br>Brian Wheeler (Aug 13, 2024 15:21 MDT)<br>Brian Wheeler | Aug 13, 2024<br>Date |

Once you have sent in your acceptance, an email confirming receipt of your offer will be sent to you. If you do not receive an email confirmation, please send an email to MAintegration@hpe.com. Please use the reference number Acquisition Code 507 in the subject line for any email correspondence regarding this offer.

**Collection of Personal Data**

If you accept HPE's offer of employment, we will need to collect your personal data in order to start setting up your profiles in our systems for key onboarding processes. Please provide your home address and daytime phone number below. Review your information carefully before submitting; incomplete and/or inaccurate data will impact your network access, payroll, and benefits enrollment during Welcome Week.

Note: As part of the onboarding process to HPE you will be receive a special welcome gift and a new HPE laptop (Window users) or Yubi Key (MAC users). These items will be mailed to your home address. **If you are residing at a temporary address, please provide that below.**

| Mailing Address | Permanent Address/Phone # | Temporary Address |
|---|---|---|
| Number/Street: | 5 Viking Dr | |
| City: | Cherry Hills Village | |
| State: | CO | |
| Zip Code: | 80113 | |
| Daytime Phone Number | 3037270033 | |

Were you employed by Hewlett Packard Enterprise after November 1, 2015? No
*Note: Please select "Yes", if you were a former Hewlett-Packard Company employee and terminated your employment from Hewlett-Packard Company between August 1 - October 31, 2015. You may have been aligned to HPE and may be considered a rehire and eligible to have your previous service bridged.*

If yes, please provide your previous HPE Employee ID if available:______________________

By providing the above information and accepting the offer of employment, you authorize HPE to contact you for HPE´s onboarding activities and other legitimate business needs.

**Signature required:** Brian Wheeler
Brian Wheeler (Aug 13, 2024 15:21 MDT)

Brian Wheeler

Aug 13, 2024

Date

**HPE Agreement Regarding Confidential Information and Proprietary Developments**

1. Consideration and Relationship to Employment. I desire to be employed by Hewlett Packard Enterprise Company or by one of its affiliates or subsidiaries (including their successors and assigns) (collectively, "HPE" or the "Company"). This Agreement states important terms that will apply during and after my employment by HPE. I understand, however, that nothing relating to this Agreement will be interpreted as a contract or commitment whereby HPE is deemed to promise continuing employment for a specified duration.

2. Confidential Information. This Agreement concerns confidential business and technical information and know-how not generally known to the public which is acquired or produced by me in connection with my employment by HPE (hereinafter "Confidential Information") as well as trade secrets that are acquired or produced by me in connection with my employment by HPE. Confidential Information is presumed to include, without limitation, information regarding HPE customers (such as customer lists, contact information, and preferences), suppliers, organizations, staffing, finance, structure, research and development, manufacturing and marketing, files, keys, certificates, passwords and other computer information, as well as information that HPE receives from others under an obligation of confidentiality. I agree to abide by HPE's Confidential Information Policy and specifically agree that with regard to HPE Confidential Information and trade secrets:

a. to use such information only in the performance of HPE duties;

b. to hold such information in confidence and trust; and

c. to use all reasonable precautions to assure that such information is not disclosed to unauthorized persons, including, without limitation, through the media, blogs, social networking sites or other online forums, or otherwise used in an unauthorized manner, both during and after my employment with HPE.

These obligations do not restrict my use of generally available knowledge, skill and education that is not specific to the Company or its business relationships but is instead knowledge generic to the industry or my profession. Information acquired by me prior to my employment or other association with HPE, and information not acquired by me in confidence as part of my job duties but instead acquired from third-parties independently and unrelated to my employment duties, is also not restricted by this Agreement.

I further agree that any organizational information, staffing information, and information on performance and/or compensation of other employees (“Personnel Information”) entrusted to me by HPE in the course of my duties with HPE (such as supervisory, management, or human resource duties) will be treated as Confidential Information of HPE, and will not be used or shared by me with any recruiters, other employers, or any other person or entity seeking to recruit or solicit other HPE employees away from HPE. I understand that I am also prohibited from using Personnel Information acquired by unlawful or improper means for the forgoing purposes, and nothing herein shall provide otherwise.

I understand that nothing in this Agreement is intended to prohibit or restrict communication with governmental agencies in compliance with applicable law. Nothing in this Agreement prohibits me from opposing or reporting to a relevant law-enforcement agency (such as but not limited to the Securities and Exchange Commission, Department of Labor, National Labor Relations Board, Equal Employment Opportunities Commission, Occupational Safety and Health Commission or law enforcement) an event that I reasonably and in good faith believe is a violation of law, obligates me to inform HPE before or after making such a report, prohibits me from cooperating in an investigation conducted by such a government agency, limits or affects my right to disclose or discuss criminal

conduct, unlawful employment practices, unlawful acts in the workplace, discrimination, harassment (including but not limited to sexual harassment or sexual assault), retaliation, workplace health and safety hazards, or any other conduct that I have reason to believe is unlawful, prohibits me from sharing such information with my personal legal counsel, or prohibits me from providing truthful testimony in a legal, administrative or arbitration proceeding.

I acknowledge notice that the Defend Trade Secrets Act provides that no individual will be held criminally or civilly liable under Federal or State trade secret law for the disclosure of a trade secret that: (a) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and made solely for the purpose of reporting or investigating a suspected violation of law; or, (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal so that it is not made public. It also provides that an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding if the individual files any document containing the trade secret under seal and does not disclose the trade secret except as permitted by court order.

3. Proprietary Developments. This Agreement also concerns inventions and discoveries (whether or not patentable), designs, works of authorship, mask works, improvements, data, processes, computer programs and software (hereinafter called "Proprietary Developments") that are conceived or made by me alone or with others while I am employed by HPE and that relate to the research and development or the business of HPE, or that result from work performed by me for HPE, or that are developed, in whole or in part, using HPE's equipment, supplies, facilities or trade secret information. Such Proprietary Developments are the sole property of HPE, and I hereby assign and transfer all rights in such Proprietary Developments to HPE. I also agree that any works of authorship created by me shall be deemed to be "works made for hire." For all Proprietary Developments, I further agree:

a. to disclose them promptly to HPE;

b. to sign any assignment document to formally perfect and confirm my assignment of title to HPE;

c. to assign any right of recovery for past damages to HPE; and

d. to execute any other documents deemed necessary by HPE to obtain, record and perfect patent, copyright, mask works and/or trade secret protection in all countries, in HPE's name and at HPE's expense.

I understand that HPE may assign and/or delegate these rights. I agree that, if requested, my disclosure, assignment, execution and cooperation duties will be provided to the entity designated by HPE.

In compliance with prevailing provisions of relevant state statutes,[1] this Agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer.

4. Respect for Rights of Former Employers. I agree to honor any valid disclosure or use restrictions on information or intellectual property known to me and received from any former employers or any other parties prior to my employment by HPE. I agree that without prior written consent of such former employers or other parties, I will not knowingly use any such information in connection with my HPE

work or work product, and I will not bring onto the premises of HPE or transfer into its computer systems any such information in whatever tangible or readable form.

5. Work Product. The product of all work performed by me during and within the scope of my HPE employment including, without limitation, any files, presentations, reports, documents, drawings, computer programs, devices and models, will be the sole property of HPE. I understand that HPE has the sole right to use, sell, license, publish or otherwise disseminate or transfer rights in such work product.

6. HPE Property. I will not remove any HPE property from HPE premises (including but not limited to HPE systems and networks) without HPE's permission. Upon termination of my employment with HPE, I will return all HPE property to HPE unless HPE's written permission to keep it is obtained (including, but not limited to, HPE records and business correspondence such as email, spreadsheets, data compilations, and other business records stored in digital or electronic files).

7. Protective Covenants. I acknowledge that a simple agreement not to disclose or use HPE's Confidential Information, trade secrets, or Proprietary Developments after my employment by HPE ends would be inadequate, standing alone, to protect HPE's legitimate business interests because some activities by a former employee who had held a position like mine would, by their nature, compromise such Confidential Information, trade secrets, and Proprietary Developments as well as the goodwill and customer relationships that HPE will pay me to develop for HPE during my employment by HPE. I recognize that activities that violate HPE's rights in this regard, whether or not intentional, are often undetectable by HPE until it is too late to obtain any effective remedy, and that such activities can cause irreparable injury to HPE. To prevent this kind of irreparable harm, I agree that for a period of twelve months following the termination of my employment with HPE, ***subject to any state-specific exclusions applicable to me under Section 13 below***, I will abide by the following "Protective Covenants":

(a) No Conflicting Business Activities. I will not provide services to a Competitor in any role or position (as an employee, consultant, or otherwise) that would involve Conflicting Business Activities; however, in the event my employment with HPE terminates as a result of a workforce restructuring program or similar reduction in force (a "Layoff"), the restriction in this clause (paragraph 7, subpart (a)) (my "Noncompetition Covenant") will not apply;

(b) No Solicitation of Customers. I will not (directly or through assistance to others) knowingly participate in soliciting or communicating with any customer of HPE in pursuit of a Competing Line of Business if I either had business-related contact with that customer or received Confidential Information about that customer in the last two years of my employment at HPE or any lesser period of employment if not employed two years (my "Look Back Period"); this paragraph 7, subpart (b) is referred to hereinafter as my "Customer Nonsolicit";

(c) No Solicitation of HPE Employees. I will not (directly or through assistance to others), for the benefit of a Competitor, knowingly participate in soliciting or communicating with an HPE employee for the purpose of persuading or helping the HPE employee to end or reduce his or her employment relationship with HPE if I either worked with that HPE employee or received Confidential Information about that HPE employee in my Look Back Period; this paragraph 7, subpart (c) is referred to hereinafter as my "Employee Nonsolicit"; and

(d) No Solicitation of HPE Suppliers. I will not (directly or through assistance to others), for the benefit of a Competitor, knowingly participate in soliciting or communicating with an HPE Supplier for the purpose of persuading or helping the HPE Supplier to end or modify to HPE's detriment an existing

business relationship with HPE if I either worked with that HPE Supplier or received Confidential Information about that HPE Supplier in my Look Back Period; this paragraph 7, subpart (d) is referred to hereinafter as my “Supplier Nonsolicit”; and, paragraph 7, subparts (b), (c) and (d) are collectively referred to hereinafter as my “Nonsolicitation Covenants”.

As used here, "Competitor" means an individual, corporation, other business entity or separately operated business unit of an entity that engages in a Competing Line of Business. "Competing Line of Business" means a business that involves a product or service offered by anyone other than HPE that would replace or compete with any product or service offered or to be offered by HPE with which I had material involvement while employed by HPE (unless HPE and its subsidiaries are no longer engaged in or planning to engage in that line of business). "Conflicting Business Activities" means job duties or other business-related activities in my Territory, or management or supervision of such job duties or business-related activities, if such job duties or business-related activities are the same as or similar in any material way to the job duties or business-related activities in which I participate or as to which I receive Confidential Information or trade secrets in my Look Back Period. "HPE Supplier" means an individual, consultant, corporation, other business entity or separately operated business unit of an entity that regularly provides goods or services to HPE or its subsidiaries, including without limitation any OEM, ODM or subcontractor, that would be difficult to replace without disruption to HPE’s ongoing business or potential irreparable harm to HPE. My “Territory” refers to the geographic area that HPE does business in and with respect to which I am provided or have access to Confidential Information or trade secrets or I have material involvement in during the Look Back Period, which area shall be presumed to be: the geographic territory assigned to me as my area(s) of responsibility during the Look Back Period applying the geographic boundaries used in the ordinary course of HPE’s business for my position if I am provided such an assigned area, my State(s) of residence during the Look Back Period, the United States, and each additional country where HPE does business that is related to my employment duties.

8. Enforcement. I make these agreements to avoid any future dispute between myself and HPE regarding specific restrictions on my post-employment conduct that will be reasonable, necessary and enforceable to protect HPE's Confidential Information, trade secrets, and Proprietary Developments and other legitimate business interests. The Protective Covenants are ancillary to the other terms of this Agreement and my employment relationship with HPE. My Nonsolicitation Covenants are understood to be reasonably limited by geography to those locations where the customers, employees and suppliers referred to are located, and if this is not sufficient for enforcement then my Territory. This Agreement benefits both me and HPE because, among other things, it provides finality and predictability for both me and HPE regarding enforceable boundaries on my future conduct. Irrespective of where the Agreement is signed or where I work for HPE, the post-employment restrictions in Section 7 (Protective Covenants) will not be enforced against me in California.

9. Notice. I acknowledge that if I am executing this Agreement in connection with my initial employment with HPE, I was provided notice of this Agreement in advance of my offer and acceptance of employment. I was provided at least 14 days to consider this Agreement before being required to execute it, and if I execute it before the expiration of 14 days then I do so voluntarily with the intent to waive the unused remainder of the 14 days allowed. If I accept a position with a Competitor at any time within twelve months following termination of my employment with HPE, I will promptly give written notice to the senior Human Resources manager for the HPE business unit in which I worked, with a copy to HPE's General Counsel, and will provide HPE with the information it needs about my new position to determine whether such position would likely lead to a violation of this Agreement (except that I need not provide any information that would include the Competitor's trade secrets). I consent to HPE notifying my new employer of the parties’ rights and obligations under this Agreement.

10. Relief; Extension. I understand that if I violate this Agreement (particularly the Protective Covenants), HPE will be entitled to pursue (i) injunctive relief by temporary restraining order, temporary injunction, and/or permanent injunction, (ii) recovery of attorney's fees and costs incurred by HPE in obtaining such relief where allowed by law, and (iii) any other legal and equitable relief to which HPE may be entitled. Injunctive relief will not exclude other remedies that might apply. If I am found to have violated any restrictions in the Protective Covenants, then the time period for such violated restrictions will be extended by one day for each day that I am found to have violated them, up to a maximum extension equal to the time period originally prescribed for the violated restrictions (a "Fairness Extension"). I acknowledge that if HPE determines that (i) I have engaged in misconduct prohibited by applicable law or any applicable policy of HPE, as in effect from time to time and/or (ii) HPE is required to make recovery from me under applicable law or a Company policy adopted to comply with applicable legal requirements (including but not limited to the Company's Dodd-Frank Clawback Policy), then HPE may, in its sole discretion, to the extent it determines appropriate and to the extent permitted under applicable law, (a) recover from me any incentive payments (whether cash or equity) paid to me up to three years prior to the end of my employment or any time thereafter; (b) cancel my outstanding incentive awards (cash and equity) whether or not vested, and cancel future payments due hereunder, and/or (c) take any other action required or permitted by applicable law; provided, however, that HPE will not, unless required or permitted by applicable law, recover amounts from a plan of non-qualified deferred compensation to the extent the recovery would result in tax penalties to me under Internal Revenue Code Section 409A.

11. Severability; Authority for Revision; Inure to Successors. The provisions of this Agreement will be separately construed. If any provision contained in this Agreement is determined to be void, illegal or unenforceable, in whole or in part, then the other provisions contained herein will remain in full force and effect as if the provision so determined had not been contained herein. If the restrictions provided in this Agreement are deemed unenforceable as written, the parties expressly authorize the court to engage in partial enforcement, revise, delete, or add to such restrictions to the extent necessary to enforce the intent of the parties and to provide HPE's goodwill, Confidential Information, trade secrets, Proprietary Developments and other business interests with effective protection. The title and paragraph headings in this Agreement are provided for convenience of reference only, and shall not be considered in determining its meaning, intent or applicability. This Agreement will automatically inure to the benefit of, and will be enforceable by, any parent, subsidiary, affiliate, successor or assign of HPE that I become employed with or have material involvement with, in order to protect such entity's legitimate business interests. I agree that this Agreement, including but not limited to the Protective Covenants contained in paragraph 7 (and its subparts), may be assigned by HPE to a subsequent employer, successor, or assign without the need for further authorization or agreement from me.

12. Governing Law; Venue. *Subject to the state exceptions provided for in Section 13 below, I agree that*:

(a) Governing Law. The laws of the state of Texas shall govern this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties hereto without regard to any conflicts of laws principles to the contrary.

(b) Venue. Subject to the limitations of any mandatory arbitration obligation I may be subject to, the exclusive venue for any legal action arising from this Agreement will be a federal or state court of competent jurisdiction located in the state of Texas (or, if Texas is not a legally proper and sustainable venue state then the state where I was last employed with HPE). I hereby stipulate and consent to the personal jurisdiction of such courts, and expressly waive any right to object to any such court's exercise of jurisdiction over me on grounds of convenience or otherwise

13. State Specific Modifications and Exclusions. For purposes of the state-specific modifications and exclusions below, the “Controlling State” refers to the state that is my primary place of residence when last employed with HPE.

(a) California. *If California is the Controlling State, then*: The post-employment restrictions in Section 7 (Protective Covenants) will not be applicable to me. However, conduct involving misappropriation of Company trade secrets will remain prohibited and nothing in this Agreement shall be construed to limit or eliminate any rights or remedies the Company would have against me under trade secret law, unfair competition law, or other laws applicable in California absent this Agreement.

(b) Colorado. *If Colorado is the Controlling State, then*: Nothing in this Agreement will require me to adjudicate outside of Colorado the enforceability of a covenant not to compete or require that another state’s law other than Colorado law govern the enforceability of a covenant not to compete that applies to me. I agree that the Conflicting Business Activities are activities that would (by their nature) involve or lead to the compromise of trade secrets. I understand that the customers and suppliers covered by the Customer and Supplier Nonsolicit restrictions will be limited to those with respect to which I am provided trade secrets in the course of employment. Accordingly, the Noncompetition Covenant and Customer and Supplier Nonsolicit covenants are each reasonable and necessary for the protection of Company trade secrets. I acknowledge that I received notice of the covenants not to compete in this Agreement and their terms before I accepted the offer of employment.

(c) District of Columbia. *If (i) I spend more than half my work time working for the Company in the District of Columbia, or (ii) I am based in the District of Columbia and do not spend the majority of my work time working in another jurisdiction; then the provisions in this part apply*: The Noncompetition Covenant will cease to apply to me 365 days after my employment with the Company ends irrespective of anything in the Agreement to the contrary. Nothing in this Agreement or any Company policy restricts me from having additional outside employment or contract work so long as the outside work does not create a conflict of interest, result in unauthorized Confidential Information use or disclosure, or impair my ability to comply with job duties in a safe and lawful manner. I will notify the Company prior to accepting any outside employment or contract work so it can be evaluated for compliance with this Agreement and Company policy. I acknowledge receipt of the following notice: “The District’s Ban on Non-Compete Agreements Amendment Act of 2020 limits the use of non-compete agreements. It allows employers to request non-compete agreements from highly compensated employees, as that term is defined in the Ban on Non-Compete Agreements Amendment Act of 2020, under certain conditions. HPE has determined that you are a highly compensated employee. For more information about the Ban on Non-Compete Agreements Amendment Act of 2020, contact the District of Columbia Department of Employment Services (DOES).” If I am a new hire, I acknowledge that I have received a copy of the Agreement at least 14 calendar days before I began working for the Company.

(d) Georgia. *If Georgia is the Controlling State, then*: The Employee Nonsolicit will be limited to the Territory. The definition of Confidential Information shall exclude data or information (i) which has been voluntarily disclosed to the public by the Company, except where such public disclosure has been made by the me without authorization from the Company; (ii) which has been independently developed and disclosed by others; or (iii) which has otherwise entered the public domain through lawful means.

(e) Illinois. *If I am executing this Agreement as a condition of employment in Illinois, then*: I acknowledge that HPE is providing me with restricted stock units (“RSUs”) under the HPE 2021 Stock Incentive Plan to supplement the value and sufficiency of the remaining professional and financial benefits of the position in which I am being employed, as special consideration for my Protective Covenants in this Agreement.

(f) Minnesota. *If Minnesota is the Controlling State, then*: (i) the post-employment restriction in Section 7(a) (the Noncompetition Covenant) shall not be applicable to me, and (ii) with respect to claims or controversies arising under Minnesota Statutes chapter 181.987 (referencing "Covenants Not To Compete"), nothing in this Agreement will require me to adjudicate outside of Minnesota such a claim arising in Minnesota or deprive me of the substantive protection of Minnesota law with respect to such a controversy arising in Minnesota.

(g) Nevada. *If Nevada is the Controlling State, then*: The post-employment period of the Noncompetition Covenant will not be applicable until I have either been employed with the Company for sixty (60) days or received $5,000 in wages from HPE after executing this Agreement. And, the Customer Nonsolicit obligation is modified to provide that nothing in it prohibits me from providing service to a former customer that I did not solicit if the customer voluntarily chooses to seek services from me without any contact instigated by me, and I am otherwise in compliance with my Noncompetition Covenant.

(h) New York. *If New York is the Controlling State, then*: The Customer Nonsolicit obligation is amended to provide that a customer of Company that becomes a customer solely as a result of the contact and business development efforts that I engaged in with the customer prior to and independent from my employment with Company will not be covered by the Customer Nonsolicit restriction.

(i) Washington. *To the extent I am a Washington based employee or Washington is the Controlling State, then*: Section 12 (Governing Law; Venue) will not be applied to deprive me of the protections or benefits of Washington Noncompete Act (Rev. Code of Wash. (RCW) §§49.62.005 - 900) (the "WNA"), or require me to adjudicate a "noncompete covenant" (as defined under the WNA) outside the state of Washington. The Customer Nonsolicit and Employee Nonsolicit are modified to only prohibit solicitation by me (i) of an HPE Employee to leave employment with the Company, and (ii) of a customer to cease or reduce the extent to which it is doing business with the Company; in accordance with the definition of a "Nonsolicitation agreement" under WNA. The Noncompetition Covenant, Supplier Nonsolicit and any other provisions in the Agreement that constitute a "noncompete covenant" as defined under the WNA will not be enforced against me if I am terminated as a result of a Layoff, and the Fairness Extension shall be limited so that it does not cause any such provision to extend more than eighteen months after termination of my employment. Nothing in the Agreement prohibits disclosure or discussion of conduct I reasonably believe to be illegal discrimination, illegal harassment, illegal retaliation, a wage and hour violation, or sexual assault, or that is recognized as against a clear mandate of public policy, or the disclosure of the existence of a settlement involving any such event or conduct.

I have been notified that I have the right to consult legal counsel prior to signing this Agreement.

I, Brian Wheeler, agree that my electronic signature/acceptance of this Agreement shall have the same binding effect as a handwritten signature and acceptance.

**HEWLETT PACKARD ENTERPRISE COMPANY**



Kristin Major
Executive Vice President

Chief People Officer

| | | |
|---|---|---|
| **Signature required:** | Brian Wheeler<br>Brian Wheeler (Aug 13, 2024 15:21 MDT) | Aug 13, 2024 |
| | Brian Wheeler | Date |

## Mutual Agreement to Arbitrate Claims

This Mutual Agreement to Arbitrate Claims ("Agreement") is between me (hereafter "Employee") and Hewlett Packard Enterprise Company (hereafter the "Company" or "HPE") or the subsidiary by which Employee is employed. Any reference to the "Company" includes all direct and indirect parent, subsidiary, partners, divisions, and affiliated entities, and all successors, predecessors, and assigns of any of them. The Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) shall govern this Agreement, which confirms a transaction involving interstate commerce. This Agreement shall be construed, interpreted, and its validity and enforceability determined, in accordance with the FAA. The mutual obligations by the Company and by Employee to arbitrate any disputes provide mutual consideration for this Agreement. Employee and the Company mutually agree that any and all disputes or claims between Employee and the Company shall be submitted exclusively to binding arbitration, to the maximum extent permitted by applicable law, as provided below.

**1. Scope of Agreement**. This Agreement applies to any past, present, or future dispute arising out of or related to Employee's application, employment or separation from employment with the Company, and survives after the employment relationship ends. The Agreement applies to any dispute that the Company may have against Employee or that Employee may have against: (1) the Company; (2) its current and former officers, directors, principals, shareholders, owners, employees, partners, vendors or agents; (3) the Company's benefit plans or the plan's sponsors, fiduciaries, administrators, affiliates, or agents; and (4) all successors, predecessors and assigns of any of them. Except as it otherwise provides, this Agreement is intended to apply to all disputes that otherwise would be resolved in a court of law or before a forum other than arbitration to the maximum extent permitted by applicable law. **This Agreement requires that all such disputes be resolved only by an arbitrator through final and binding arbitration and not by a court or jury trial or administrative hearing, to the maximum extent permitted by applicable law.** With the exception of claims regarding the validity, scope, or enforceability (including unconscionability) of the Class Action Waiver and Collective Action Waiver, addressed below, as well as the determination of whether the dispute involves a sexual harassment dispute or a sexual assault dispute, Employee and the Company agree to submit to the arbitrator all claims or disputes regarding arbitrability, the validity, scope, enforceability, interpretation, or application of this Agreement, the arbitrator's jurisdiction, as well as any gateway, threshold, or any other challenges to this Agreement, including claims that this Agreement is unconscionable or unenforceable.

**2. Covered Claims.** Except as it otherwise provides in Section 3, this Agreement applies, without limitation, to disputes or claims arising out of or relating to Employee's employment relationship with the Company (including the recruitment to or termination from), and including, but not limited to claims alleging: (i) discrimination or harassment based on race, creed, color, religion, sex, age, disability, leave status, national origin, ancestry, sexual orientation, marital status, veteran or military reserve status, or any other characteristic protected by federal, state or local law; (ii) retaliation, including, but not limited to, whistleblower status or retaliation for filing a workers' compensation claim; (iii) torts, including, but not limited to, battery, defamation, invasion of privacy, infliction of emotional distress, or workplace injury not otherwise covered by applicable workers' compensation laws; (iv) all employment related laws, including, but not limited to, Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Equal Pay Act, Genetic Information Nondiscrimination Act, the Family and Medical Leave Act, the Worker Adjustment Retraining and Notification Act, and any amendments to these laws, and any such related or similar state or local laws; (v) any federal, state or local law or common law claim for breach of contract, promissory estoppel, wrongful discharge or conversion; (vi) claims under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or any other claims concerning the Company's benefit plans, that are not excluded below; (vii) claims regarding

compensation or wages including, without limitation, claims for pay, minimum wage and overtime, wage or other penalties, benefits (except as excluded below), vacation, meal and rest breaks, classification, reimbursement of expenses, compensation, stock, or incentive bonus plans; (viii) individual (not representative) claims under the California Private Attorneys General Act (or any similar state law); (ix) claims concerning trade secrets, unfair competition, the Uniform Trade Secrets Act, intellectual property rights and associated laws; and (x) federal and state statutes, regulations, ordinances, or other laws addressing any of the foregoing or similar subject matters, and all other state statutory and common law claims to the maximum extent permitted by applicable law.

**3. Claims Not Covered By This Agreement.** This Agreement does not apply to claims for workers compensation benefits, state disability insurance, and unemployment insurance benefits. This Agreement does not apply to (a) claims for benefits under any ERISA-covered benefit plan sponsored by the Company or funded by insurance, which include their own dispute resolution procedure; provided however that this Agreement does apply to any claims for breach of fiduciary duty, for penalties, or alleging any other violation of ERISA, even if such breach of fiduciary duty claim is combined with a claim for benefits; (b) claims for benefits under any benefit plan sponsored by the Company which includes its own arbitration procedure; provided however, if such arbitration procedure is held to be not binding or unenforceable, then this Agreement does apply; (c) claims under ERISA that may have a preclusive effect on the interests of other participants in a benefit plan sponsored by the Company; and (d) disputes that by law may not be subject to pre-dispute arbitration, including sexual harassment disputes and sexual assault disputes. The Company and Employee may pursue provisional relief as provided by applicable law, including temporary and/or preliminary injunctive relief, in a court of competent jurisdiction on the ground that an award may be rendered ineffective without provisional relief pending arbitration; provided, however, that all issues of final relief shall continue to be decided through arbitration, and the pursuit of the provisional relief described herein shall not constitute a waiver of the parties' agreement to arbitrate.

**4. Administrative Agency Claims.** Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if, and only if, applicable law permits access to such an agency even with the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to stop or excuse a party from filing an administrative claim or charge with any agency in order to fulfill the party's requirement to exhaust administrative remedies and procedures before making a claim in arbitration.

**5. Notice of Claim and Exhaustion of Internal Procedures.** All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must file and serve a demand for arbitration in writing and deliver the written demand by hand, overnight delivery or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the Company's principal office located at 1701 East Mossy Oaks Road, Spring, TX 77389-1767, attention General Counsel. Notice to the Employee shall be sent to the Employee's last known home address as reflected in HPE's system of record. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. Before initiating arbitration, Employee and the Company must utilize, and nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from utilizing, the Company's or

applicable benefit plan's existing internal procedures for investigation and/or resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

**6. Class and Collective Action Waivers.** Employee and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, multiple-plaintiff, or private attorney general representative action basis. Accordingly, the Employee and Company agree as follows:

(a) There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action; and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.

(b) There will be no right or authority for any dispute to be brought, heard, or arbitrated as a collective action ("Collective Action Waiver"). The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action; and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.

(c) There will be no right or authority for any dispute to be brought, heard, or arbitrated jointly with other plaintiffs ("Multiple-Plaintiff Waiver"). The Multiple-Plaintiff Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a single-plaintiff case and other plaintiffs seek to join their cases together; and (2) a civil court of competent jurisdiction finds the Multiple-Plaintiff Waiver is unenforceable. In such instances, the multiple-plaintiff action(s) must be litigated in a civil court of competent jurisdiction.

(d) There will be no right or authority for any dispute to be arbitrated as a private attorney general representative action. To the extent any representative claims are asserted under California's Private Attorneys General Act or any similar state law, and to the extent Employee has standing to assert any such claims in court, the parties agree to stay such claims in court pending resolution of all claims that are properly subject to arbitration to the maximum extent allowed by law. To the extent Employee lacks statutory standing to continue to maintain non-individual representative claims in court, such claims will be subject to dismissal consistent with applicable law.

(e) Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver or Collective Action Waiver is invalid, unenforceable, unconscionable, void, or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

(f) The Class Action Waiver and Collective Action Waiver shall be severable from this agreement in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

**7. Mandatory Mediation.** After submission of the written claim as set forth above, the parties shall submit the matter to non-binding mediation before a mutually selected neutral mediator. The Company shall pay the reasonable fees of the mediator and the expenses associated with the mediation. JAMS, or to the extent JAMS is not available to mediate, a comparable independent mediation service shall be used to provide the mediator and the rules under which the mediation will

be conducted. In the event the claim is not resolved through the mediation process, the claim shall be submitted to binding arbitration, as provided herein.

**8. Selection of the Arbitrator and Arbitration Rules.** The parties shall jointly select a neutral arbitrator from JAMS and, except as provided in this Agreement, the binding arbitration shall be conducted in accordance with the then current JAMS Employment Arbitration Rules and Procedures. The JAMS rules are available from JAMS (currently they can be found at www.jamsadr.com/rules-employment-arbitration/). Unless the parties jointly agree otherwise, the Arbitrator shall be a retired judge (the "Arbitrator"), and the arbitration shall take place in or near the city in which Employee is currently or was last employed by the Company, as reflected in the Company's HR system of record.

**9. Pre-Hearing Procedures.** The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes. The Arbitrator shall permit and rule on a motion to dismiss and/or a motion for summary judgment by either party and shall apply the standards governing such motions as set forth in the Federal Rules of Civil Procedure.

**10. Substantive Law and Arbitration Proceeding.** The Arbitrator shall apply the substantive law including, but not limited to, applicable statutes of limitations, of the state of the Employee's work location, as reflected in the Company's HR system of record, at the time the dispute arises, or federal law, or both, as applicable to the claims asserted. The Arbitrator is without jurisdiction to apply any different substantive law. In arbitration, the parties will have the right to conduct adequate discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. The Federal Rules of Evidence shall apply. Within 30 days of the close of the arbitration hearing (or such deadline set by the arbitrator), either party will have the right to file a brief with the Arbitrator (subject to contemporaneously serving such brief on the other party).

**11. Confidentiality.** Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the content (including all testimony, information and discovery materials), or results of any arbitration hereunder without the prior written consent of all parties.

**12. The Arbitrator's Award.** The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement.

**13. The Arbitrator's Written Decision.** The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration. The Arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.

**14. Arbitration Fees.** Each party will pay the fees for his, her, or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. In all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. However, if under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

**15. Successors and Assigns.** This Agreement will inure to the benefit of the parties' heirs, successors, and assigns. Employee agrees this Agreement may be assigned by the Company to a subsequent employer, successor, or assign without the need for further authorization or agreement from Employee.

**16. Entire Agreement.** This Agreement is the full and complete agreement relating to the formal resolution of Covered Claims. Except as stated above regarding the Class Action Waiver, Collective Action Waiver and Multiple-Plaintiff Waiver, in the event any portion of this Agreement is deemed unenforceable, the unenforceable provision will be severed from the Agreement and the remainder of this Agreement will be enforceable. Notwithstanding any contrary language, if any, in any Company policy or writing, this Agreement may not be modified, revised or terminated absent a writing signed by both parties.

**17. At-Will Employment.** This Agreement does not in any way alter the "at-will" status of my employment; Employee understands and agrees his/her employment with HPE is for an indefinite term and is terminable, with or without cause, at any time by either Employee or HPE.

I, Brian Wheeler, have carefully read this agreement and agree to its terms.

I, Brian Wheeler, understand and agree that by accepting this agreement, the Company and I are each giving up our respective rights to a jury trial and that pursuant to the terms of this agreement, we are agreeing to arbitrate all disputes covered by this agreement.

I, Brian Wheeler, agree that my electronic signature/acceptance of this agreement shall have the same binding effect as a handwritten signature and acceptance.

**HEWLETT PACKARD ENTERPRISE COMPANY**



Kristin Major
Executive Vice President
Chief People Officer

| | | |
|---|---|---|
| **Signature required:** | Brian Wheeler<br>Brian Wheeler (Aug 13, 2024 15:21 MDT)<br>Brian Wheeler | Aug 13, 2024<br>Date |

## HPE Employee Letter of Assurance Agreement Form

U.S. Export Controls on Technology Transfer:

I acknowledge that during my work for Hewlett Packard Enterprise (HPE) I may, directly or indirectly, receive or access software and/or technical data which HPE has classified according to the US Commerce Control List (CCL) as eligible for export under license exemption "Technology and Software Under Restriction" (TSR, 15 CFR § 740.6) to all destinations except those listed below.

I agree not to export or re-export this software and/or technical data or any direct product based on this software or technical data without proper US government authorization to destinations not eligible for exports under license exemption TSR.

According to current US export regulations the following countries are not eligible for exports under license exemption TSR.

This list is subject to change without notice.

Armenia
Azerbaijan
Belarus
Cambodia
China (People's Republic of China, PRC)
Cuba
Georgia
Iran
Iraq
Kazakhstan
Kyrgyzstan
Laos
Libya
Macao (Macau)
Moldova
Mongolian People's Republic
North Korea
Russia
Sudan (Khartoum)
Syria
Tajikistan
Turkmenistan
Ukraine
Uzbekistan
Venezuela
Vietnam
Yemen

**Signature required:** Brian Wheeler
Brian Wheeler (Aug 13, 2024 15:21 MDT)

Brian Wheeler

Aug 13, 2024

Date

# RULES REGARDING OBLIGATIONS RELATED TO PREVIOUS EMPLOYERS & OTHER THIRD PARTIES

In addition to the terms and conditions outlined in your offer of employment from Hewlett Packard Enterprise of any of its affiliates or subsidiaries (collectively "HPE" or "the Company), the Company expects you to adhere to the following rules to ensure you do not breach any duty to your previous employer or any other third party.

1. It is important that you return to your previous employer all company property and business information in your possession and/or control that belongs to it, including all business technical and customer account information, address lists, notebooks, training materials, company manuals, keys, credit cards, etc. If you have been using any company equipment (including a laptop or other computer, personal digital assistant and cell phone) you should not copy, download or remove any business information from it, and you should return it upon leaving your employment. In addition, if you have any other of your previous employer's business information stored on any equipment or in hard copy at a location other than your previous employer's offices or business location, you should immediately arrange for the information to be destroyed or returned to your previous employer.

2. In performing your work for the Company, you must not use or disclose any trade secrets, confidential business or technical information, or know-how not generally known to the public ("confidential information") that you learned in the course of your employment with any previous employer or third party.

3. You should not contact or solicit, directly or indirectly, any employee of your previous employer for the purpose of having the employee become employed by the Company if there is any reason that doing so would violate your previous employer's rights - for example, if you are bound by a non-solicitation agreement with your previous employer, or if in recruiting the employee you would make use of confidential information about the employee, such as his or her assignments, ranking, rating, compensation or incentives.

4. Do not make any disparaging or derogatory statements about your previous employer in the scope of your employment with the Company.

The following additional rules apply to prospective employees who are being offered a customer-facing position in the Company:

5. Prior to informing the appropriate persons at your previous employer that you are leaving your employment, you should not discuss the fact that you are planning to join the Company with any of your current customers or accounts.

6. Before leaving your previous employer, you should not initiate contact with your customers or accounts to solicit them to transfer their business to the Company.

7. You must not send any announcements about your employment with the Company to any customers or accounts with whom you have been working during the course and/or scope of your employment with a previous employer, without prior approval from the Company.

**Signature required:** Brian Wheeler
Brian Wheeler (Aug 13, 2024 15:21 MDT)
Brian Wheeler

Aug 13, 2024
Date

# Personal and Confidential: HPE Offer Letter

Final Audit Report 2024-08-13

| | |
|---|---|
| Created: | 2024-08-08 |
| By: | US MADO HR Ops (ushropsbusinessevents@hpe.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAU6MbtseGGCJm4-ZOptFTQfX-qU1Ufl31 |

## "Personal and Confidential: HPE Offer Letter" History

Document created by US MADO HR Ops (ushropsbusinessevents@hpe.com)
2024-08-08 - 9:13:44 PM GMT- IP address: 170.85.57.16

Document emailed to brian@morpheusdata.com for signature
2024-08-08 - 9:20:25 PM GMT

Email viewed by brian@morpheusdata.com
2024-08-08 - 9:21:19 PM GMT- IP address: 104.28.48.216

Signer brian@morpheusdata.com entered name at signing as Brian Wheeler
2024-08-13 - 9:21:04 PM GMT- IP address: 64.155.0.34

Document e-signed by Brian Wheeler (brian@morpheusdata.com)
Signature Date: 2024-08-13 - 9:21:06 PM GMT - Time Source: server- IP address: 64.155.0.34

Agreement completed.
2024-08-13 - 9:21:06 PM GMT