# Exhibit 12

KIRKLAND & ELLIS LLP

Christopher Lawless
To Call Writer Directly:
+1 213 680 8217
christopher.lawless@kirkland.com

2049 Century Pk E,
Los Angeles, CA 90067
United States

+1 310 552 4200

www.kirkland.com

**CONFIDENTIAL**

October 13, 2026

**By E-mail**
larry@coloradoemploymentlawllc.com

Lawrence Lee, Esq.
Colorado Employment Law, LLC

**Re: Brian Wheeler and HPE Confidential Information and Proprietary Developments – Demand to Cease and Desist, Return HPE Information, and Preserve Evidence**

Dear Mr. Lee:

In connection with HPE's (Sean McDonnell's) communication to your client, Mr. Brian Wheeler, on October 13, 2026, I write on behalf of Hewlett Packard Enterprise Company ("HPE") to address Mr. Wheeler's unlawful misappropriation of confidential, proprietary, and trade secret information ("HPE Information") that he obtained from HPE, transferred and used in unauthorized manner, including at least by removing from HPE systems an HPE software development tool and related data and materials and posting them to the GitHub open-source repository without the required approvals. As already communicated to Mr. Wheeler, HPE demands that he immediately: (1) confirm the full extent to which he has exfiltrated any HPE Information or disseminated it to any other devices, storage locations, or third-parties; (2) provide his HPE-managed devices and all personal devices and storage accounts that contain HPE Information for forensic analysis; (3) provide HPE with adequate assurances that all information that he obtained while working for HPE has been fully protected, and that he has not and will not delete evidence of this matter, or encourage others to do so; and (4) identify all other people that he is aware of that have been involved in any way in exfiltrating or improperly using HPE Information, the dates and circumstances of such conduct, and all involved devices and storage locations. HPE is preparing to take immediate legal action against him and potentially others if he does not comply with these requests and fully cooperate.

Specifically, data in the GitHub "hero-engine" organization and related repositories reflects that Mr. Wheeler created those repositories and removed from HPE environments confidential and proprietary HPE files, code, and other data relating to the Hero tool. This material included highly confidential and trade secret information developed inside HPE using HPE proprietary data, including HPE-originated source code. These activities were outside the scope of Mr. Wheeler's

HPE duties, were not performed for a legitimate HPE business purpose, and violated his agreements with HPE and HPE policies. Moreover, when Mr. Wheeler was questioned about other unauthorized uses of HPE files in September 2026, he failed to inform HPE about his possession and use of the Hero tool and related code and data outside of Mr. Wheeler's HPE job duties, including the posting of such information on GitHub.

Mr. Wheeler's exfiltration and use of these materials directly violate his confidentiality obligations, including under the HPE Agreement Regarding Confidential Information and Proprietary Developments ("ARCIPD") that Mr. Wheeler signed on August 13, 2024. By signing the ARCIPD, Mr. Wheeler agreed to the following regarding HPE Confidential Information:

> I agree to abide by HPE's Confidential Information Policy and specifically agree that with regard to HPE Confidential Information and trade secrets:
>
> a. to use such information only in the performance of HPE duties;
>
> b. to hold such information in confidence and trust; and
>
> c. to use all reasonable precautions to assure that such information is not disclosed to unauthorized persons, including, without limitation, through the media, blogs, social networking sites or other online forums, or otherwise used in an unauthorized manner, both during and after my employment with HPE.

Section 2, ARCIPD. Section 2 also defines Confidential Information as follows:

> This Agreement concerns confidential business and technical information and know-how not generally known to the public which is acquired or produced by me in connection with my employment by HPE (hereinafter "Confidential Information") as well as trade secrets that are acquired or produced by me in connection with my employment by HPE. Confidential Information is presumed to include, without limitation, information regarding HPE customers (such as customer lists, contact information, and preferences), suppliers, organizations, staffing, finance, structure, research and development, manufacturing and marketing, files, keys, certificates, passwords and other computer information, as well as information that HPE receives from others under an obligation of confidentiality.

KIRKLAND & ELLIS LLP



Further, Mr. Wheeler agreed that Proprietary Developments[1] "are the sole property of HPE, and I hereby assign and transfer all rights in such Proprietary Developments to HPE." Section 3, ARCIPD. Mr. Wheeler also agreed "that any works of authorship created by me shall be deemed to be 'works made for hire'" and, for all Proprietary Developments, agreed:

a. to disclose them promptly to HPE;

b. to sign any assignment document to formally perfect and confirm my assignment of title to HPE;

c. to assign any right of recovery for past damages to HPE; and

d. to execute any other documents deemed necessary by HPE to obtain, record and perfect patent, copyright, mask works and/or trade secret protection in all countries, in HPE's name and at HPE's expense.

Section 3, ARCIPD. Mr. Wheeler also agreed to "not remove any HPE property from HPE premises (including but not limited to HPE systems and networks) without HPE's permission." Section 6, ARCIPD.

Mr. Wheeler's conduct described in this letter also violates HPE's Confidential Information Policy that he agreed to abide by when signing the ARCIPD. The Confidential Information Policy makes clear that HPE Information is company property, and as an HPE employee, Mr. Wheeler had "a duty to protect it, to keep it confidential, as appropriate, and to use it only for valid business purposes." Disclosure of Company Information, internally or externally, requires "a good business reason and with adequate safeguards" as detailed in the policy (*see* "Using and Disclosing Company Information"), including "in accordance with applicable IT, Security and Legal policies and guidelines" hyperlinked in the policy. Failure to comply with the Confidential Information Policy "is considered misconduct under the HPE Standards of Business

---

[1] The term "Proprietary Developments" is defined in the ARCIPD as follows: "This Agreement also concerns inventions and discoveries (whether or not patentable), designs, works of authorship, mask works, improvements, data, processes, computer programs and software (hereinafter called 'Proprietary Developments') that are conceived or made by me alone or with others while I am employed by HPE and that relate to the research and development or the business of HPE, or that result from work performed by me for HPE, or that are developed, in whole or in part, using HPE's equipment, supplies, facilities or trade secret information." ARCIPD, Section 3.

Conduct (SBC) and may lead to disciplinary action up to and including termination of employment."

Mr. Wheeler's conduct described in this letter also violates the HPE Standards of Business Conduct ("SBC"). In signing his written offer of employment with HPE on August 13, 2024, Mr. Wheeler certified: "I have read, understand and agree to comply with the Company's Standards of Business Conduct ('SBC') and all related policies . . . and acknowledge my responsibility to comply with the SBC and related policies following the commencement of my employment." The SBC states further confidentiality obligations that Mr. Wheeler owes to HPE:

> As HPE employees, you are expected to safeguard the integrity of our sensitive and confidential information, and our intellectual property, by taking appropriate steps to avoid unauthorized disclosure. . . . . You may use and disclose sensitive HPE . . . information only for legitimate business purposes, and only when appropriate protections are in place . . . .

SBC at 17. The SBC expressly applies to HPE intellectual property, including trade secrets, and technical designs and reiterates that "violations of these rules can lead to disciplinary sanctions, including termination of employment."

Mr. Wheeler also knew and understood that the HPE code, materials, and information constituted sensitive HPE Confidential Information and trade secret information, and that removing it from HPE in ways allowing further unauthorized access was not permitted, because Mr. Wheeler completed training on HPE Confidential Information and Protecting HPE Resources, including on October 13, 2025 and October 5, 2026.

In September 2026, HPE raised multiple concerns about large-volume file transfers from Mr. Wheeler's HPE-managed device to an external network and his connecting a secure digital ("SD") card into that device. In response, Mr. Wheeler confirmed the following in writing to HPE on September 29, 2026: "you are not aware of any other HPE files, documents, business records, or other Information that you copied or externally transferred from HPE's systems, and you confirmed that, to the best of your knowledge, no such files, documents, records, or information exist outside of your HPE-managed device." Recently HPE became aware that those assurances were false. In breach of his ARCIPD with HPE, the Confidential Information Policy, and HPE Standards of Business Conduct, Mr. Wheeler removed HPE property, including Confidential Information and trade secrets, from HPE systems and networks; used such information outside of his job duties for HPE; and disclosed such information to unauthorized persons, among other things. He previously failed to disclose this misconduct relating to the Hero tool, code, and data, and instead concealed his misconduct from HPE.

Accordingly, Mr. Wheeler is in unlawful possession of a significant volume of HPE trade secrets, Confidential Information, and otherwise protected HPE files and data, the continued possession, use, and/or disclosure of which would cause additional immense, irreparable harm to HPE and other affected parties.

We further understand that Mr. Wheeler has encouraged and worked in concert with others, including at least one other HPE employee or former employee, in a coordinated scheme to violate their respective ARCIPD agreements, the HPE Confidential Information Policy, HPE Standards of Business Conduct, and other confidentiality obligations to HPE.

Mr. Wheeler's acquisition, disclosure, and use of this proprietary information appears to violate at least Title 18 United States Code Section 1836 et seq., which is the Federal Defend Trade Secrets Act ("DTSA"). The DTSA prohibits misappropriation, including unauthorized acquisition, use, and disclosure of a trade secret. Mr. Wheeler's actions have also, among other things, breached his agreements with HPE and HPE policies and interfered with and have caused the breach of other employee agreements with HPE.

To prevent continued and additional harm from this unlawful conduct, HPE is preparing to immediately file a lawsuit against Mr. Wheeler in federal court, along with an emergency application for a Temporary Restraining Order. Resolution without litigation requires his immediate and full cooperation. Accordingly, you must (1) contact me to resolve this matter by **3:00 pm MT on Thursday, October 15, 2026**; and (2) before and after contacting me, Mr. Wheeler must provide complete and adequate assurances that he has not and will not:

a) Disclose(d) to anyone else any materials he obtained from HPE;

b) Delete(d) any materials that he has obtained from HPE or any other communications, files, data, or material concerning this matter (including from all personal devices and cloud or other online storage, including associated with the GitHub user name "chet-bellows"), which he is obligated by law to preserve and not to delete in view of the claims HPE intends to bring against him; and

c) Communicate(d) with any other person to instruct, encourage, or suggest that they delete any communications or materials relevant to these issues or otherwise interfere with HPE's investigation.

HPE also demands Mr. Wheeler's assurances that he will immediately provide any personal device(s) and access to any of his personal cloud accounts or other storage repositories that contain HPE Information, including but not limited to the hero-engine GitHub organization, for forensic inspection by a third-party computer forensic expert to be selected by HPE.

**CONFIDENTIAL**

In addition, HPE demands that Mr. Wheeler immediately:

(1) Cease all access to, use, copying, modification, and dissemination of HPE Information, including the Hero tool and all related code and data;

(2) Take all steps within his control to restrict public access to the hero-engine GitHub organization and any related repositories (for example, by making them private), without deleting or altering their contents, pending HPE's forensic inspection;

(3) Return to HPE all HPE Information and HPE property in his possession, custody, or control, in whatever form; any destruction or remediation of copies may occur only at HPE's written direction and after forensic preservation, so as not to compromise evidence;

(4) Provide a sworn written statement identifying all HPE Information he has taken, every location to which it was transferred, and every person or entity to whom it was disclosed; and

(5) Cooperate fully with HPE's investigation, including by making himself available for interview and responding truthfully and completely to HPE's inquiries.

As set forth above, I ask that you contact me directly at clawless@kirkland.com or 213.258.8220 by **<u>3:00 pm MT on Thursday, October 15, 2026</u>** to begin attempting to resolve this critical matter. HPE expressly reserves all rights and remedies regarding Mr. Wheeler's conduct and this matter.

With kind regards,

C. Lawless

Christopher Lawless

Enclosures:
Attachment 1: HPE Employment Offer attaching HPE ARCIPD
Attachment 2: HPE Confidential Information Policy
Attachment 3: HPE Standards of Business Conduct

# Attachment 1

Hewlett Packard
Enterprise

August [illegible], 2024

PERSONAL & CONFIDENTIAL

Brian Wheeler
Morpheus Data

Dear Brian,

On behalf of Hewlett Packard Enterprise Company ("HPE" or "the Company"), we are pleased to formally extend an offer to you to join the Company in the following role:

Job Title: Fellow
Job Level: Vice President

We hope you'll view this offer as an opportunity to further develop your professional career and help us innovate at HPE. Together we can create what comes next!

This offer is contingent on your continued employment in good standing with Morpheus Data until your first day with HPE (your "HPE start date"). Your HPE start date is expected to be October [illegible], 2024, contingent upon the successful close of HPE's acquisition of Morpheus Data (the "Merger"). For avoidance of doubt, in the event that the Merger is not consummated for any reason, this offer will be considered null and void.

Your employee number will be [redacted]. If you are a rehired HPE employee, this number may change and you will be notified of this change in the coming weeks.

Effective as of your HPE start date, your initial annual base salary will be $[illegible] to be paid in twenty-four (24) semi-monthly payments (less all applicable deductions and withholdings). Your paydays are expected to occur on the 15th and last day of the month, unless such date falls on a weekend or a company-observed holiday, in which case you will be paid on the workday immediately preceding the payday.

In addition to your base salary, you will be eligible to participate in the Company's Pay-for-Results (PfR) Annual Bonus Plan, and have a target bonus opportunity equal to 40% of your eligible earnings, with a maximum bonus opportunity equal to three times your bonus target, subject to the terms of the PfR plan's terms and conditions noted in the PfR Plan document (which are subject to modification from time to time). The bonus is discretionary and based on company, business unit, and individual performance. Your current fiscal year bonus, if any, will be calculated based on your eligible earnings from your date of hire through to the end of the fiscal year. The Company will deduct from the bonus any applicable withholding taxes or other deductions it is required to make by

law. For avoidance of doubt, your Morpheus Data cash incentive plans will conclude prior to your HPE start date and any earned amounts will be paid according to those plans' terms and conditions.

Except as otherwise stated herein, you will be ineligible for any unpaid amounts if your employment terminates for any reason prior to the payment date.

When you join HPE, you will be eligible to participate in the benefit programs that are generally afforded to HPE employees, subject to HPE's policies. These and any other benefit programs are subject to modification from time to time. Your HPE benefit programs will begin on your HPE start date. For detailed information go to ALEX for HPE.

You will receive credit for your continuous service with Morpheus Data in determining the rate at which you accrue vacation under HPE's vacation program, determining FMLA eligibility and for purposes of service awards. You will also receive service credit for purposes of vesting in matching contributions under the HPE 401(k) Plan and determining severance benefits under an HPE severance plan. Your service for all other HPE benefit and compensation programs will begin on your HPE start date.

You will be eligible for vacation in accordance with the Company's relevant policy and be eligible for 20 vacation days per year. Your 2024 allotment will be prorated for the months you are actually employed in 2024 (as measured from your HPE start date).

If applicable, this offer is contingent upon you obtaining work authorization and establishing a permanent address within the United States. A U.S. address must be provided to HPE within 30 days of your start date or this offer will be considered void. If you will need immigration assistance, please contact Fragomen, Del Rey, Bernsen & Loewy, LLP at 408-330-1172 or HPE@fragomen.com.

Further, if you are a foreign national with a visa from a restricted country, this offer is extended conditionally upon receipt of approval from HPE's Global Trade office. We do not anticipate to have received this approval by the time you will need to accept this offer, but we will inform you if and when this approval is obtained.

If you accept this offer as set forth above, you must also meet the following conditions to be eligible for employment with the Company:

*Background Screen.* This offer and your continued employment are contingent upon successful completion of the Company's background screen, which includes a criminal background check, verification of prior employment, verification of education, and other information required by Company policy or consistent with the Company's normal processes and procedures. If at any time during your employment with the Company, your position involves work on a customer account where a contract or customer requirement calls for an additional background screen (such as a drug screen), you will be separately notified of such requirements at that time. It is your decision whether to resign your present employment or take other actions in reliance of this offer until such time as you have successfully completed the background screen required for the offered position.

*Legal U.S. Work Authorization.* This offer is contingent upon your compliance with the Immigration Reform and Control Act of 1986 ("the Act"). In essence, the Act requires you to establish your identity and employment eligibility. If you accept this offer, you will be required to complete the Employment Eligibility Verification Form (I-9) prior to your start date. Additional information will be forthcoming.

HPE is an E-Verify employer. E-Verify is an Internet-based system that compares information from an employee's Form I-9, Employment Eligibility Verification, to data from U.S. Department of Homeland Security and Social Security Administration records to confirm the employment eligibility of all newly hired employees.

*Verification relating to export controls*: This offer and your employment are conditional upon the company obtaining satisfactory verifications relating to export controls for any job related technical data required for the position for which you are being hired.

*Personal Data:* HPE will process your personal information in the course of your employment with the Company. By accepting this offer of employment, you acknowledge you have received the Employee Privacy Policy which explains how HPE processes your personal information, including via **HPE's IT and communication systems. This policy (as updated from time to time) is accessible from** the footer of each HPE.com intranet page.

*Standards of Business Conduct*. If you accept this offer, you will be subject to the Company's Standards of Business Conduct ("SBC") and relevant policies. Adherence to the SBC and related policies, including subsequent changes, is required of all employees. Further, should you decide to accept this offer of employment, please be advised that the Company's SBC requires you to honor any agreements you have with your previous employers, including obligations regarding the disclosure or use of proprietary information (as applicable).

You can access and read the Standards of Business Conduct, US Drug policy and Employee Privacy Policy here:

SBC
US Drug Policy
Employee Privacy Policy

**Agreement Regarding Confidential Information and Proprietary Developments ("ARCIPD").** This offer and your employment are conditional upon your review and acceptance of the ARCIPD. Please review the ARCIPD, which is attached below.

**Arbitration Agreement.** This offer and your employment are also conditional upon your review and acceptance of the Mutual Agreement to Arbitrate Claims. Arbitration has become a common practice in many areas of business and HPE recognizes arbitration to be an effective way to resolve employment-related disputes. Please review the Mutual Agreement to Arbitrate Claims attached below.

**HPE Employee Letter of Assurance Agreement and Rules Regarding Obligations to Previous Employers and Other Third Parties.** This offer and your employment are further conditioned upon your acceptance of the HPE Employee Letter of Assurance Agreement and Rules Regarding Obligations to Previous Employers and Other Third Parties. Please review these documents attached below.

In addition, where applicable, this offer and your employment are conditional upon the Company receiving satisfactory references or background check results, medical reports and documentary evidence confirming that you are permitted to take up the position for which you are being hired in your local country. Please note that in the event the Company is not satisfied with any of these items, the Company reserves the right to withdraw or delay this offer of employment.

In addition, by accepting this offer, you confirm you are not bound by any restrictive covenant, non-competition agreement, non-solicitation agreement or other circumstance that would prevent you from accepting this position or limit your effectiveness from performing your role with the Company (as outlined herein). You agree that you either have not taken or have returned all confidential information (e.g., trade secrets, confidential business or technical information or know-how not generally known to the public) belonging to any previous employer or other third party and will not bring such information with you to the Company, nor will you use and/or disclose any such confidential information during the course and/or scope of your employment with the Company.

The Company complies with all applicable employment discrimination laws. This includes providing reasonable accommodation to qualified individuals as required by law. If you believe you need accommodations, please contact HPE People Care. You may also discuss the matter with your manager.

Please understand that your employment with the Company would be at-will, and as such, would be for an indefinite term and may be ended, with or without cause or prior notice, atm any time by either you or the Company. The at-will nature of your job may be changed only through a written communication to you from the Company's General Counsel. Other terms and conditions of employment such as job responsibilities or governing policies may be changed at the Company's discretion.

**For your acceptance to be valid, the Company must receive your reply indicating your acceptance no later than 5:00 pm CST on Tuesday, August 13, 2024. If your acceptance is not received by 5:00 pm CST on Tuesday, August 13, 2024, then this offer of employment will be considered null and void.**

All HPE new hires are required to successfully complete pre-employment screening. You will receive an email from HPE Human Resources with a link to complete your pre-employment screening profile and to provide your consent for First Advantage®, HPE's global employment screening vendor, to conduct your screening. Your timely completion of this process is critical.

We hope you will regard this letter as evidence of HPE's strong desire to have you join the Company. Let's build the future together!

Sincerely,

Fidelma Russo

Fidelma Russo
EVP & GM, Hybrid Cloud and Chief Technology Officer
Hybrid Cloud & Office of the CTO

**Offer of Employment Acceptance**

Please provide your acceptance no later than **5:00 pm CST on Tuesday, August 13, 2024** or this offer of employment will be considered null and void.

To accept this offer of employment and agree to the above, please sign below and the five (5) attached agreements indicating your acceptance of offer and terms by typing your first and last name **in the "Click here to sign" fields.**

**In accepting the Company's conditional offer of employment, I have read, understand and agree to** the terms and conditions of Agreements and other documents attached, specifically the Mutual Agreement to Arbitrate Claims, HPE Agreement Regarding Confidential Information and Proprietary Developments, Rules Regarding Obligations Related to Previous Employers & Other Third Parties, and the HPE Employee Letter of Assurance Agreement.

**Additionally, I have read, understand and agree to comply with the Company's Standards of Business Conduct ("SBC") and all related policies, including the U.S. Drug Policy, and** acknowledge my responsibility to comply with the SBC and related policies following the commencement of my employment.

| | | |
|---|---|---|
| **Signature required:** | Brian Wheeler<br>Brian Wheeler (Aug 13, 2024 15:21 MDT) | Aug 13, 2024 |
| | Brian Wheeler | Date |

Once you have sent in your acceptance, an email confirming receipt of your offer will be sent to you. If you do not receive an email confirmation, please send an email to MAintegration@hpe.com. Please use the reference number Acquisition Code 507 in the subject line for any email correspondence regarding this offer.

**Collection of Personal Data**

If you accept HPE's offer of employment, we will need to collect your personal data in order to start setting up your profiles in our systems for key onboarding processes. Please provide your home address and daytime phone number below. <u>Review your information carefully before submitting; incomplete and/or inaccurate data will impact your network access, payroll, and benefits enrollment during Welcome Week.</u>

Note: As part of the onboarding process to HPE you will be receive a special welcome gift and a new HPE laptop (Windows users) or Yubi Key (MAC users). These items will be mailed to your home address. **If you are residing at a temporary address, please provide that below.**

| Mailing Address | Permanent Address/Phone # | Temporary Address |
|---|---|---|
| Number/Street: | 1 Viking Dr | |
| City: | Cherry Hills Village | |
| State: | CO | |
| Zip Code: | [illegible] | |
| Daytime Phone Number: | [illegible] | [redacted] |

Were you employed by Hewlett Packard Enterprise after November 1, 2015? No
*Note: Please select "Yes" if you were a former Hewlett-Packard Company employee and terminated your employment from Hewlett-Packard Company between August 1 – October 31, 2015. You may have been aligned to HPE and may be considered a rehire and eligible to have your previous service bridged.*

If yes, please provide your previous HPE Employee ID if available: ______________________

By providing the above information and accepting the offer of employment, you authorize HPE to contact you for HPE's onboarding activities and other legitimate business needs.

Signature required: Brian Wheeler
Brian Wheeler (Aug 13, 2024 15:11 MDT)
Brian Wheeler

Aug 13, 2024
Date

**HPE Agreement Regarding Confidential Information and Proprietary Developments**

1. Consideration and Relationship to Employment. I desire to be employed by Hewlett Packard Enterprise Company or by one of its affiliates or subsidiaries (including their successors and assigns) (collectively, "HPE" or the "Company"). This Agreement states important terms that will apply during and after my employment by HPE. I understand, however, that nothing relating to this Agreement will be interpreted as a contract or commitment whereby HPE is deemed to promise continuing employment for a specified duration.

2. Confidential Information. This Agreement concerns confidential business and technical information and know-how not generally known to the public which is acquired or produced by me in connection with my employment by HPE (hereinafter "Confidential Information") as well as trade secrets that are acquired or produced by me in connection with my employment by HPE. Confidential Information is presumed to include, without limitation, information regarding HPE customers (such as customer lists, contact information, and preferences), suppliers, organizations, staffing, finance, structure, research and development, manufacturing and marketing, files, keys, certificates, passwords and other computer information, as well as information that HPE receives from others under an obligation of confidentiality. I agree to abide by HPE's Confidential Information Policy and specifically agree that with regard to HPE Confidential Information and trade secrets:

a. to use such information only in the performance of HPE duties;

b. to hold such information in confidence and trust; and

c. to use all reasonable precautions to assure that such information is not disclosed to unauthorized persons, including, without limitation, through the media, blogs, social networking sites or other online forums, or otherwise used in an unauthorized manner, both during and after my employment with HPE.

These obligations do not restrict my use of generally available knowledge, skill and education that is not specific to the Company or its business relationships but is instead knowledge generic to the industry or my profession. Information acquired by me prior to my employment or other association with HPE, and information not acquired by me in confidence as part of my job duties but instead acquired from third-parties independently and unrelated to my employment duties, is also not restricted by this Agreement.

I further agree that any organizational information, staffing information, and information on performance and/or compensation of other employees ("Personnel Information") entrusted to me by HPE in the course of my duties with HPE (such as supervisory, management, or human resource duties) will be treated as Confidential Information of HPE, and will not be used or shared by me with any recruiters, other employers, or any other person or entity seeking to recruit or solicit other HPE employees away from HPE. I understand that I am also prohibited from using Personnel Information acquired by unlawful or improper means for the forgoing purposes, and nothing herein shall provide otherwise.

I understand that nothing in this Agreement is intended to prohibit or restrict communication with governmental agencies in compliance with applicable law. Nothing in this Agreement prohibits me from opposing or reporting to a relevant law-enforcement agency (such as but not limited to the Securities and Exchange Commission, Department of Labor, National Labor Relations Board, Equal Employment Opportunities Commission, Occupational Safety and Health Commission or law enforcement) an event that I reasonably and in good faith believe is a violation of law, obligates me to inform HPE before or after making such a report, prohibits me from cooperating in an investigation conducted by such a government agency, limits or affects my right to disclose or discuss criminal

conduct, unlawful employment practices, unlawful acts in the workplace, discrimination, harassment (including but not limited to sexual harassment or sexual assault), retaliation, workplace health and safety hazards, or any other conduct that I have reason to believe is unlawful, prohibits me from sharing such information with my personal legal counsel, or prohibits me from providing truthful testimony in a legal, administrative or arbitration proceeding.

I acknowledge notice that the Defend Trade Secrets Act provides that no individual will be held criminally or civilly liable under Federal or State trade secret law for the disclosure of a trade secret that: (a) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and made solely for the purpose of reporting or investigating a suspected violation of law; or, (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal so that it is not made public. It also provides that an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding if the individual files any document containing the trade secret under seal and does not disclose the trade secret except as permitted by court order.

3. Proprietary Developments. This Agreement also concerns inventions and discoveries (whether or not patentable), designs, works of authorship, mask works, improvements, data, processes, computer programs and software (hereinafter called "Proprietary Developments") that are conceived or made by me alone or with others while I am employed by HPE and that relate to the research and development or the business of HPE, or that result from work performed by me for HPE, or that are developed, in whole or in part, using HPE's equipment, supplies, facilities or trade secret information. Such Proprietary Developments are the sole property of HPE, and I hereby assign and transfer all rights in such Proprietary Developments to HPE. I also agree that any works of authorship created by me shall be deemed to be "works made for hire." For all Proprietary Developments, I further agree:

a. to disclose them promptly to HPE;
b. to sign any assignment document to formally perfect and confirm my assignment of title to HPE;
c. to assign any right of recovery for past damages to HPE; and
d. to execute any other documents deemed necessary by HPE to obtain, record and perfect patent, copyright, mask works and/or trade secret protection in all countries, in HPE's name and at HPE's expense.

I understand that HPE may assign and/or delegate these rights. I agree that, if requested, my disclosure, assignment, execution and cooperation duties will be provided to the entity designated by HPE.

In compliance with prevailing provisions of relevant state statutes,[1] this Agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer.

4. Respect for Rights of Former Employers. I agree to honor any valid disclosure or use restrictions on information or intellectual property known to me and received from any former employers or any other parties prior to my employment by HPE. I agree that without prior written consent of such former employers or other parties, I will not knowingly use any such information in connection with my HPE

work or work product, and I will not bring onto the premises of HPE or transfer into its computer systems any such information in whatever tangible or readable form.

5. Work Product. The product of all work performed by me during and within the scope of my HPE employment including, without limitation, any files, presentations, reports, documents, drawings, computer programs, devices and models, will be the sole property of HPE. I understand that HPE has the sole right to use, sell, license, publish or otherwise disseminate or transfer rights in such work product.

6. HPE Property. I will not remove any HPE property from HPE premises (including but not limited to HPE systems and networks) without HPE's permission. Upon termination of my employment with HPE, I will return all HPE property to HPE unless HPE's written permission to keep it is obtained (including, but not limited to, HPE records and business correspondence such as email, spreadsheets, data compilations, and other business records stored in digital or electronic files).

7. Protective Covenants. I acknowledge that a simple agreement not to disclose or use HPE's Confidential Information, trade secrets, or Proprietary Developments after my employment by HPE ends would be inadequate, standing alone, to protect HPE's legitimate business interests because some activities by a former employee who had held a position like mine would, by their nature, compromise such Confidential Information, trade secrets, and Proprietary Developments as well as the goodwill and customer relationships that HPE will pay me to develop for HPE during my employment by HPE. I recognize that activities that violate HPE's rights in this regard, whether or not intentional, are often undetectable by HPE until it is too late to obtain any effective remedy, and that such activities can cause irreparable injury to HPE. To prevent this kind of irreparable harm, I agree that for a period of twelve months following the termination of my employment with HPE, ***subject to any state-specific exclusions applicable to me under Section 13 below***, I will abide by the following "Protective Covenants":

(a) No Conflicting Business Activities. I will not provide services to a Competitor in any role or position (as an employee, consultant, or otherwise) that would involve Conflicting Business Activities; however, in the event my employment with HPE terminates as a result of a workforce restructuring program or similar reduction in force (a "Layoff"), the restriction in this clause (paragraph 7, subpart (a)) (my "Noncompetition Covenant") will not apply;

(b) No Solicitation of Customers. I will not (directly or through assistance to others) knowingly participate in soliciting or communicating with any customer of HPE in pursuit of a Competing Line of Business if I either had business-related contact with that customer or received Confidential Information about that customer in the last two years of my employment at HPE or any lesser period of employment if not employed two years (my "Look Back Period"); this paragraph 7, subpart (b) is referred to hereinafter as my "Customer Nonsolicit";

(c) No Solicitation of HPE Employees. I will not (directly or through assistance to others), for the benefit of a Competitor, knowingly participate in soliciting or communicating with an HPE employee for the purpose of persuading or helping the HPE employee to end or reduce his or her employment relationship with HPE if I either worked with that HPE employee or received Confidential Information about that HPE employee in my Look Back Period; this paragraph 7, subpart (c) is referred to hereinafter as my "Employee Nonsolicit"; and

(d) No Solicitation of HPE Suppliers. I will not (directly or through assistance to others), for the benefit of a Competitor, knowingly participate in soliciting or communicating with an HPE Supplier for the purpose of persuading or helping the HPE Supplier to end or modify to HPE's detriment an existing

business relationship with HPE if I either worked with that HPE Supplier or received Confidential Information about that HPE Supplier in my Look Back Period; this paragraph 7, subpart (d) is referred to hereinafter as my "Supplier Nonsolicit"; and, paragraph 7, subparts (b), (c) and (d) are collectively referred to hereinafter as my "Nonsolicitation Covenants".

As used here, "Competitor" means an individual, corporation, other business entity or separately operated business unit of an entity that engages in a Competing Line of Business. "Competing Line of Business" means a business that involves a product or service offered by anyone other than HPE that would replace or compete with any product or service offered or to be offered by HPE with which I had material involvement while employed by HPE (unless HPE and its subsidiaries are no longer engaged in or planning to engage in that line of business). "Conflicting Business Activities" means job duties or other business-related activities in my Territory, or management or supervision of such job duties or business-related activities, if such job duties or business-related activities are the same as or similar in any material way to the job duties or business-related activities in which I participate or as to which I receive Confidential Information or trade secrets in my Look Back Period. "HPE Supplier" means an individual, consultant, corporation, other business entity or separately operated business unit of an entity that regularly provides goods or services to HPE or its subsidiaries, including without limitation any OEM, ODM or subcontractor, that would be difficult to replace without disruption to HPE's ongoing business or potential irreparable harm to HPE. My "Territory" refers to the geographic area that HPE does business in and with respect to which I am provided or have access to Confidential Information or trade secrets or I have material involvement in during the Look Back Period, which area shall be presumed to be: the geographic territory assigned to me as my area(s) of responsibility during the Look Back Period applying the geographic boundaries used in the ordinary course of HPE's business for my position if I am provided such an assigned area, my State(s) of residence during the Look Back Period, the United States, and each additional country where HPE does business that is related to my employment duties.

8. <u>Enforcement.</u> I make these agreements to avoid any future dispute between myself and HPE regarding specific restrictions on my post-employment conduct that will be reasonable, necessary and enforceable to protect HPE's Confidential Information, trade secrets, and Proprietary Developments and other legitimate business interests. The Protective Covenants are ancillary to the other terms of this Agreement and my employment relationship with HPE. My Nonsolicitation Covenants are understood to be reasonably limited by geography to those locations where the customers, employees and suppliers referred to are located, and if this is not sufficient for enforcement then my Territory. This Agreement benefits both me and HPE because, among other things, it provides finality and predictability for both me and HPE regarding enforceable boundaries on my future conduct. Irrespective of where the Agreement is signed or where I work for HPE, the post-employment restrictions in Section 7 (Protective Covenants) will not be enforced against me in California.

9. <u>Notice.</u> I acknowledge that if I am executing this Agreement in connection with my initial employment with HPE, I was provided notice of this Agreement in advance of my offer and acceptance of employment. I was provided at least 14 days to consider this Agreement before being required to execute it, and if I execute it before the expiration of 14 days then I do so voluntarily with the intent to waive the unused remainder of the 14 days allowed. If I accept a position with a Competitor at any time within twelve months following termination of my employment with HPE, I will promptly give written notice to the senior Human Resources manager for the HPE business unit in which I worked, with a copy to HPE's General Counsel, and will provide HPE with the information it needs about my new position to determine whether such position would likely lead to a violation of this Agreement (except that I need not provide any information that would include the Competitor's trade secrets). I consent to HPE notifying my new employer of the parties' rights and obligations under this Agreement.

10. Relief; Extension. I understand that if I violate this Agreement (particularly the Protective Covenants), HPE will be entitled to pursue (i) injunctive relief by temporary restraining order, temporary injunction, and/or permanent injunction, (ii) recovery of attorney's fees and costs incurred by HPE in obtaining such relief where allowed by law, and (iii) any other legal and equitable relief to which HPE may be entitled. Injunctive relief will not exclude other remedies that might apply. If I am found to have violated any restrictions in the Protective Covenants, then the time period for such violated restrictions will be extended by one day for each day that I am found to have violated them, up to a maximum extension equal to the time period originally prescribed for the violated restrictions (a "Fairness Extension"). I acknowledge that if HPE determines that (i) I have engaged in misconduct prohibited by applicable law or any applicable policy of HPE, as in effect from time to time and/or (ii) HPE is required to make recovery from me under applicable law or a Company policy adopted to comply with applicable legal requirements (including but not limited to the Company's Dodd-Frank Clawback Policy), then HPE may, in its sole discretion, to the extent it determines appropriate and to the extent permitted under applicable law, (a) recover from me any incentive payments (whether cash or equity) paid to me up to three years prior to the end of my employment or any time thereafter; (b) cancel my outstanding incentive awards (cash and equity) whether or not vested, and cancel future payments due hereunder, and/or (c) take any other action required or permitted by applicable law; provided, however, that HPE will not, unless required or permitted by applicable law, recover amounts from a plan of non-qualified deferred compensation to the extent the recovery would result in tax penalties to me under Internal Revenue Code Section 409A.

11. Severability; Authority for Revision; Inure to Successors. The provisions of this Agreement will be separately construed. If any provision contained in this Agreement is determined to be void, illegal or unenforceable, in whole or in part, then the other provisions contained herein will remain in full force and effect as if the provision so determined had not been contained herein. If the restrictions provided in this Agreement are deemed unenforceable as written, the parties expressly authorize the court to engage in partial enforcement, revise, delete, or add to such restrictions to the extent necessary to enforce the intent of the parties and to provide HPE's goodwill, Confidential Information, trade secrets, Proprietary Developments and other business interests with effective protection. The title and paragraph headings in this Agreement are provided for convenience of reference only, and shall not be considered in determining its meaning, intent or applicability. This Agreement will automatically inure to the benefit of, and will be enforceable by, any parent, subsidiary, affiliate, successor or assign of HPE that I become employed with or have material involvement with, in order to protect such entity's legitimate business interests. I agree that this Agreement, including but not limited to the Protective Covenants contained in paragraph 7 (and its subparts), may be assigned by HPE to a subsequent employer, successor, or assign without the need for further authorization or agreement from me.

12. Governing Law; Venue. *Subject to the state exceptions provided for in Section 13 below, I agree that*:

(a) Governing Law. The laws of the state of Texas shall govern this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties hereto without regard to any conflicts of laws principles to the contrary.

(b) Venue. Subject to the limitations of any mandatory arbitration obligation I may be subject to, the exclusive venue for any legal action arising from this Agreement will be a federal or state court of competent jurisdiction located in the state of Texas (or, if Texas is not a legally proper and sustainable venue state then the state where I was last employed with HPE). I hereby stipulate and consent to the personal jurisdiction of such courts, and expressly waive any right to object to any such court's exercise of jurisdiction over me on grounds of convenience or otherwise

13. State Specific Modifications and Exclusions. For purposes of the state-specific modifications and exclusions below, the "Controlling State" refers to the state that is my primary place of residence when last employed with HPE.

(a) California. *If California is the Controlling State, then*: The post-employment restrictions in Section 7 (Protective Covenants) will not be applicable to me. However, conduct involving misappropriation of Company trade secrets will remain prohibited and nothing in this Agreement shall be construed to limit or eliminate any rights or remedies the Company would have against me under trade secret law, unfair competition law, or other laws applicable in California absent this Agreement.

(b) Colorado. *If Colorado is the Controlling State, then*: Nothing in this Agreement will require me to adjudicate outside of Colorado the enforceability of a covenant not to compete or require that another state's law other than Colorado law govern the enforceability of a covenant not to compete that applies to me. I agree that the Conflicting Business Activities are activities that would (by their nature) involve or lead to the compromise of trade secrets. I understand that the customers and suppliers covered by the Customer and Supplier Nonsolicit restrictions will be limited to those with respect to which I am provided trade secrets in the course of employment. Accordingly, the Noncompetition Covenant and Customer and Supplier Nonsolicit covenants are each reasonable and necessary for the protection of Company trade secrets. I acknowledge that I received notice of the covenants not to compete in this Agreement and their terms before I accepted the offer of employment.

(c) District of Columbia. *If (i) I spend more than half my work time working for the Company in the District of Columbia, or (ii) I am based in the District of Columbia and do not spend the majority of my work time working in another jurisdiction; then the provisions in this part apply*: The Noncompetition Covenant will cease to apply to me 365 days after my employment with the Company ends irrespective of anything in the Agreement to the contrary. Nothing in this Agreement or any Company policy restricts me from having additional outside employment or contract work so long as the outside work does not create a conflict of interest, result in unauthorized Confidential Information use or disclosure, or impair my ability to comply with job duties in a safe and lawful manner. I will notify the Company prior to accepting any outside employment or contract work so it can be evaluated for compliance with this Agreement and Company policy. I acknowledge receipt of the following notice: "The District's Ban on Non-Compete Agreements Amendment Act of 2020 limits the use of non-compete agreements. It allows employers to request non-compete agreements from highly compensated employees, as that term is defined in the Ban on Non-Compete Agreements Amendment Act of 2020, under certain conditions. HPE has determined that you are a highly compensated employee. For more information about the Ban on Non-Compete Agreements Amendment Act of 2020, contact the District of Columbia Department of Employment Services (DOES)." If I am a new hire, I acknowledge that I have received a copy of the Agreement at least 14 calendar days before I began working for the Company.

(d) Georgia. *If Georgia is the Controlling State, then*: The Employee Nonsolicit will be limited to the Territory. The definition of Confidential Information shall exclude data or information (i) which has been voluntarily disclosed to the public by the Company, except where such public disclosure has been made by the me without authorization from the Company; (ii) which has been independently developed and disclosed by others; or (iii) which has otherwise entered the public domain through lawful means.

(e) Illinois. *If I am executing this Agreement as a condition of employment in Illinois, then*: I acknowledge that HPE is providing me with restricted stock units ("RSUs") under the HPE 2021 Stock Incentive Plan to supplement the value and sufficiency of the remaining professional and financial benefits of the position in which I am being employed, as special consideration for my Protective Covenants in this Agreement.

(f) Minnesota. *If Minnesota is the Controlling State, then*: (i) the post-employment restriction in Section 7(a) (the Noncompetition Covenant) shall not be applicable to me, and (ii) with respect to claims or controversies arising under Minnesota Statutes chapter 181.987 (referencing "Covenants Not To Compete"), nothing in this Agreement will require me to adjudicate outside of Minnesota such a claim arising in Minnesota or deprive me of the substantive protection of Minnesota law with respect to such a controversy arising in Minnesota.

(g) Nevada. *If Nevada is the Controlling State, then*: The post-employment period of the Noncompetition Covenant will not be applicable until I have either been employed with the Company for sixty (60) days or received $5,000 in wages from HPE after executing this Agreement. And, the Customer Nonsolicit obligation is modified to provide that nothing in it prohibits me from providing service to a former customer that I did not solicit if the customer voluntarily chooses to seek services from me without any contact instigated by me, and I am otherwise in compliance with my Noncompetition Covenant.

(h) New York. *If New York is the Controlling State, then*: The Customer Nonsolicit obligation is amended to provide that a customer of Company that becomes a customer solely as a result of the contact and business development efforts that I engaged in with the customer prior to and independent from my employment with Company will not be covered by the Customer Nonsolicit restriction.

(i) Washington. *To the extent I am a Washington based employee or Washington is the Controlling State, then*: Section 12 (Governing Law; Venue) will not be applied to deprive me of the protections or benefits of Washington Noncompete Act (Rev. Code of Wash. (RCW) §§49.62.005 - 900) (the "WNA"), or require me to adjudicate a "noncompete covenant" (as defined under the WNA) outside the state of Washington. The Customer Nonsolicit and Employee Nonsolicit are modified to only prohibit solicitation by me (i) of an HPE Employee to leave employment with the Company, and (ii) of a customer to cease or reduce the extent to which it is doing business with the Company; in accordance with the definition of a "Nonsolicitation agreement" under WNA. The Noncompetition Covenant, Supplier Nonsolicit and any other provisions in the Agreement that constitute a "noncompete covenant" as defined under the WNA will not be enforced against me if I am terminated as a result of a Layoff, and the Fairness Extension shall be limited so that it does not cause any such provision to extend more than eighteen months after termination of my employment. Nothing in the Agreement prohibits disclosure or discussion of conduct I reasonably believe to be illegal discrimination, illegal harassment, illegal retaliation, a wage and hour violation, or sexual assault, or that is recognized as against a clear mandate of public policy, or the disclosure of the existence of a settlement involving any such event or conduct.

I have been notified that I have the right to consult legal counsel prior to signing this Agreement.

I, Brian Wheeler, agree that my electronic signature/acceptance of this Agreement shall have the same binding effect as a handwritten signature and acceptance.

**HEWLETT PACKARD ENTERPRISE COMPANY**

Kristin Major
Executive Vice President

Chief People Officer

| | | |
|---|---|---|
| **Signature required:** | Brian Wheeler<br>Brian Wheeler (Aug 13, 2024 15:21 MDT) | Aug 13, 2024 |
| | Brian Wheeler | Date |

**Mutual Agreement to Arbitrate Claims**

This Mutual Agreement to Arbitrate Claims ("Agreement") is between me (hereafter "Employee") and Hewlett Packard Enterprise Company (hereafter the "Company" or "HPE") or the subsidiary by which Employee is employed. Any reference to the "Company" includes all direct and indirect parent, subsidiary, partners, divisions, and affiliated entities, and all successors, predecessors, and assigns of any of them. The Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) shall govern this Agreement, which confirms a transaction involving interstate commerce. This Agreement shall be construed, interpreted, and its validity and enforceability determined, in accordance with the FAA. The mutual obligations by the Company and by Employee to arbitrate any disputes provide mutual consideration for this Agreement. Employee and the Company mutually agree that any and all disputes or claims between Employee and the Company shall be submitted exclusively to binding arbitration, to the maximum extent permitted by applicable law, as provided below.

**1. Scope of Agreement**. This Agreement applies to any past, present, or future dispute arising out of or related to Employee's application, employment or separation from employment with the Company, and survives after the employment relationship ends. The Agreement applies to any dispute that the Company may have against Employee or that Employee may have against: (1) the Company; (2) its current and former officers, directors, principals, shareholders, owners, employees, partners, vendors or agents; (3) the Company's benefit plans or the plan's sponsors, fiduciaries, administrators, affiliates, or agents; and (4) all successors, predecessors and assigns of any of them. Except as it otherwise provides, this Agreement is intended to apply to all disputes that otherwise would be resolved in a court of law or before a forum other than arbitration to the maximum extent permitted by applicable law. **This Agreement requires that all such disputes be resolved only by an arbitrator through final and binding arbitration and not by a court or jury trial or administrative hearing, to the maximum extent permitted by applicable law.** With the exception of claims regarding the validity, scope, or enforceability (including unconscionability) of the Class Action Waiver and Collective Action Waiver, addressed below, as well as the determination of whether the dispute involves a sexual harassment dispute or a sexual assault dispute, Employee and the Company agree to submit to the arbitrator all claims or disputes regarding arbitrability, the validity, scope, enforceability, interpretation, or application of this Agreement, the arbitrator's jurisdiction, as well as any gateway, threshold, or any other challenges to this Agreement, including claims that this Agreement is unconscionable or unenforceable.

**2. Covered Claims.** Except as it otherwise provides in Section 3, this Agreement applies, without limitation, to disputes or claims arising out of or relating to Employee's employment relationship with the Company (including the recruitment to or termination from), and including, but not limited to claims alleging: (i) discrimination or harassment based on race, creed, color, religion, sex, age, disability, leave status, national origin, ancestry, sexual orientation, marital status, veteran or military reserve status, or any other characteristic protected by federal, state or local law; (ii) retaliation, including, but not limited to, whistleblower status or retaliation for filing a workers' compensation claim; (iii) torts, including, but not limited to, battery, defamation, invasion of privacy, infliction of emotional distress, or workplace injury not otherwise covered by applicable workers' compensation laws; (iv) all employment related laws, including, but not limited to, Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Equal Pay Act, Genetic Information Nondiscrimination Act, the Family and Medical Leave Act, the Worker Adjustment Retraining and Notification Act, and any amendments to these laws, and any such related or similar state or local laws; (v) any federal, state or local law or common law claim for breach of contract, promissory estoppel, wrongful discharge or conversion; (vi) claims under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or any other claims concerning the Company's benefit plans, that are not excluded below; (vii) claims regarding

compensation or wages including, without limitation, claims for pay, minimum wage and overtime, wage or other penalties, benefits (except as excluded below), vacation, meal and rest breaks, classification, reimbursement of expenses, compensation, stock, or incentive bonus plans; (viii) individual (not representative) claims under the California Private Attorneys General Act (or any similar state law); (ix) claims concerning trade secrets, unfair competition, the Uniform Trade Secrets Act, intellectual property rights and associated laws; and (x) federal and state statutes, regulations, ordinances, or other laws addressing any of the foregoing or similar subject matters, and all other state statutory and common law claims to the maximum extent permitted by applicable law.

**3. Claims Not Covered By This Agreement.** This Agreement does not apply to claims for workers compensation benefits, state disability insurance, and unemployment insurance benefits. This Agreement does not apply to (a) claims for benefits under any ERISA-covered benefit plan sponsored by the Company or funded by insurance, which include their own dispute resolution procedure; provided however that this Agreement does apply to any claims for breach of fiduciary duty, for penalties, or alleging any other violation of ERISA, even if such breach of fiduciary duty claim is combined with a claim for benefits; (b) claims for benefits under any benefit plan sponsored by the Company which includes its own arbitration procedure; provided however, if such arbitration procedure is held to be not binding or unenforceable, then this Agreement does apply; (c) claims under ERISA that may have a preclusive effect on the interests of other participants in a benefit plan sponsored by the Company; and (d) disputes that by law may not be subject to pre-dispute arbitration, including sexual harassment disputes and sexual assault disputes. The Company and Employee may pursue provisional relief as provided by applicable law, including temporary and/or preliminary injunctive relief, in a court of competent jurisdiction on the ground that an award may be rendered ineffective without provisional relief pending arbitration; provided, however, that all issues of final relief shall continue to be decided through arbitration, and the pursuit of the provisional relief described herein shall not constitute a waiver of the parties' agreement to arbitrate.

**4. Administrative Agency Claims.** Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if, and only if, applicable law permits access to such an agency even with the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to stop or excuse a party from filing an administrative claim or charge with any agency in order to fulfill the party's requirement to exhaust administrative remedies and procedures before making a claim in arbitration.

**5. Notice of Claim and Exhaustion of Internal Procedures.** All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must file and serve a demand for arbitration in writing and deliver the written demand by hand, overnight delivery or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the Company's principal office located at 1701 East Mossy Oaks Road, Spring, TX 77389-1767, attention General Counsel. Notice to the Employee shall be sent to the Employee's last known home address as reflected in HPE's system of record. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. Before initiating arbitration, Employee and the Company must utilize, and nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from utilizing, the Company's or

applicable benefit plan's existing internal procedures for investigation and/or resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

**6. Class and Collective Action Waivers.** Employee and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, multiple-plaintiff, or private attorney general representative action basis. Accordingly, the Employee and Company agree as follows:

(a) There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action; and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.

(b) There will be no right or authority for any dispute to be brought, heard, or arbitrated as a collective action ("Collective Action Waiver"). The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action; and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.

(c) There will be no right or authority for any dispute to be brought, heard, or arbitrated jointly with other plaintiffs ("Multiple-Plaintiff Waiver"). The Multiple-Plaintiff Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a single-plaintiff case and other plaintiffs seek to join their cases together; and (2) a civil court of competent jurisdiction finds the Multiple-Plaintiff Waiver is unenforceable. In such instances, the multiple-plaintiff action(s) must be litigated in a civil court of competent jurisdiction.

(d) There will be no right or authority for any dispute to be arbitrated as a private attorney general representative action. To the extent any representative claims are asserted under California's Private Attorneys General Act or any similar state law, and to the extent Employee has standing to assert any such claims in court, the parties agree to stay such claims in court pending resolution of all claims that are properly subject to arbitration to the maximum extent allowed by law. To the extent Employee lacks statutory standing to continue to maintain non-individual representative claims in court, such claims will be subject to dismissal consistent with applicable law.

(e) Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver or Collective Action Waiver is invalid, unenforceable, unconscionable, void, or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

(f) The Class Action Waiver and Collective Action Waiver shall be severable from this agreement in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

**7. Mandatory Mediation.** After submission of the written claim as set forth above, the parties shall submit the matter to non-binding mediation before a mutually selected neutral mediator. The Company shall pay the reasonable fees of the mediator and the expenses associated with the mediation. JAMS, or to the extent JAMS is not available to mediate, a comparable independent mediation service shall be used to provide the mediator and the rules under which the mediation will

be conducted. In the event the claim is not resolved through the mediation process, the claim shall be submitted to binding arbitration, as provided herein.

**8. Selection of the Arbitrator and Arbitration Rules.** The parties shall jointly select a neutral arbitrator from JAMS and, except as provided in this Agreement, the binding arbitration shall be conducted in accordance with the then current JAMS Employment Arbitration Rules and Procedures. The JAMS rules are available from JAMS (currently they can be found at www.jamsadr.com/rules-employment-arbitration/). Unless the parties jointly agree otherwise, the Arbitrator shall be a retired judge (the "Arbitrator"), and the arbitration shall take place in or near the city in which Employee is currently or was last employed by the Company, as reflected in the Company's HR system of record.

**9. Pre-Hearing Procedures.** The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes. The Arbitrator shall permit and rule on a motion to dismiss and/or a motion for summary judgment by either party and shall apply the standards governing such motions as set forth in the Federal Rules of Civil Procedure.

**10. Substantive Law and Arbitration Proceeding.** The Arbitrator shall apply the substantive law including, but not limited to, applicable statutes of limitations, of the state of the Employee's work location, as reflected in the Company's HR system of record, at the time the dispute arises, or federal law, or both, as applicable to the claims asserted. The Arbitrator is without jurisdiction to apply any different substantive law. In arbitration, the parties will have the right to conduct adequate discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. The Federal Rules of Evidence shall apply. Within 30 days of the close of the arbitration hearing (or such deadline set by the arbitrator), either party will have the right to file a brief with the Arbitrator (subject to contemporaneously serving such brief on the other party).

**11. Confidentiality.** Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the content (including all testimony, information and discovery materials), or results of any arbitration hereunder without the prior written consent of all parties.

**12. The Arbitrator's Award.** The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement.

**13. The Arbitrator's Written Decision.** The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration. The Arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.

**14. Arbitration Fees.** Each party will pay the fees for his, her, or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. In all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. However, if under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

**15. Successors and Assigns.** This Agreement will inure to the benefit of the parties' heirs, successors, and assigns. Employee agrees this Agreement may be assigned by the Company to a subsequent employer, successor, or assign without the need for further authorization or agreement from Employee.

**16. Entire Agreement.** This Agreement is the full and complete agreement relating to the formal resolution of Covered Claims. Except as stated above regarding the Class Action Waiver, Collective Action Waiver and Multiple-Plaintiff Waiver, in the event any portion of this Agreement is deemed unenforceable, the unenforceable provision will be severed from the Agreement and the remainder of this Agreement will be enforceable. Notwithstanding any contrary language, if any, in any Company policy or writing, this Agreement may not be modified, revised or terminated absent a writing signed by both parties.

**17. At-Will Employment.** This Agreement does not in any way alter the "at-will" status of my employment; Employee understands and agrees his/her employment with HPE is for an indefinite term and is terminable, with or without cause, at any time by either Employee or HPE.

I, Brian Wheeler, have carefully read this agreement and agree to its terms.

I, Brian Wheeler, understand and agree that by accepting this agreement, the Company and I are each giving up our respective rights to a jury trial and that pursuant to the terms of this agreement, we are agreeing to arbitrate all disputes covered by this agreement.

I, Brian Wheeler, agree that my electronic signature/acceptance of this agreement shall have the same binding effect as a handwritten signature and acceptance.

**HEWLETT PACKARD ENTERPRISE COMPANY**

[signature]

Kristin Major
Executive Vice President
Chief People Officer

| | | |
|---|---|---|
| **Signature required:** | Brian Wheeler<br>Brian Wheeler (Aug 13, 2024 15:21 MDT) | Aug 13, 2024 |
| | Brian Wheeler | Date |

**HPE Employee Letter of Assurance Agreement Form**

U.S. Export Controls on Technology Transfer:

I acknowledge that during my work for Hewlett Packard Enterprise (HPE) I may, directly or indirectly, receive or access software and/or technical data which HPE has classified according to the US Commerce Control List (CCL) as eligible for export under license exemption "Technology and Software Under Restriction" (TSR, 15 CFR § 740.6) to all destinations except those listed below.

I agree not to export or re-export this software and/or technical data or any direct product based on this software or technical data without proper US government authorization to destinations not eligible for exports under license exemption TSR.

According to current US export regulations the following countries are not eligible for exports under license exemption TSR.

This list is subject to change without notice.

Armenia
Azerbaijan
Belarus
Cambodia
China (People's Republic of China, PRC)
Cuba
Georgia
Iran
Iraq
Kazakhstan
Kyrgyzstan
Laos
Libya
Macao (Macau)
Moldova
Mongolian People's Republic
North Korea
Russia
Sudan (Khartoum)
Syria
Tajikistan
Turkmenistan
Ukraine
Uzbekistan
Venezuela
Vietnam
Yemen

**Signature required:** Brian Wheeler
Brian Wheeler (Aug 13, 2024 15:21 MDT)

Brian Wheeler

Aug 13, 2024

Date

## RULES REGARDING OBLIGATIONS RELATED TO PREVIOUS EMPLOYERS & OTHER THIRD PARTIES

In addition to the terms and conditions outlined in your offer of employment from Hewlett Packard Enterprise of any of its affiliates or subsidiaries (collectively "HPE" or "the Company), the Company expects you to adhere to the following rules to ensure you do not breach any duty to your previous employer or any other third party.

1. It is important that you return to your previous employer all company property and business information in your possession and/or control that belongs to it, including all business technical and customer account information, address lists, notebooks, training materials, company manuals, keys, credit cards, etc. If you have been using any company equipment (including a laptop or other computer, personal digital assistant and cell phone) you should not copy, download or remove any business information from it, and you should return it upon leaving your employment. In addition, if you have any other of your previous employer's business information stored on any equipment or in hard copy at a location other than your previous employer's offices or business location, you should immediately arrange for the information to be destroyed or returned to your previous employer.

2. In performing your work for the Company, you must not use or disclose any trade secrets, confidential business or technical information, or know-how not generally known to the public ("confidential information") that you learned in the course of your employment with any previous employer or third party.

3. You should not contact or solicit, directly or indirectly, any employee of your previous employer for the purpose of having the employee become employed by the Company if there is any reason that doing so would violate your previous employer's rights - for example, if you are bound by a non-solicitation agreement with your previous employer, or if in recruiting the employee you would make use of confidential information about the employee, such as his or her assignments, ranking, rating, compensation or incentives.

4. Do not make any disparaging or derogatory statements about your previous employer in the scope of your employment with the Company.

The following additional rules apply to prospective employees who are being offered a customer-facing position in the Company:

5. Prior to informing the appropriate persons at your previous employer that you are leaving your employment, you should not discuss the fact that you are planning to join the Company with any of your current customers or accounts.

6. Before leaving your previous employer, you should not initiate contact with your customers or accounts to solicit them to transfer their business to the Company.

7. You must not send any announcements about your employment with the Company to any customers or accounts with whom you have been working during the course and/or scope of your employment with a previous employer, without prior approval from the Company.

| | | |
|---|---|---|
| **Signature required:** | Brian Wheeler<br>Brian Wheeler (Aug 13, 2024 15:21 MDT) | Aug 13, 2024 |
| | Brian Wheeler | Date |

# Personal and Confidential: HPE Offer Letter

Final Audit Report 2024-08-13

| | |
|---|---|
| Created: | 2024-08-08 |
| By: | US MADO HR Ops (ushropsbusinessevents@hpe.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAU6MbtseGGCJm4-ZOptFTQfX-qU1Ufl31 |

## "Personal and Confidential: HPE Offer Letter" History

Document created by US MADO HR Ops (ushropsbusinessevents@hpe.com)
2024-08-08 - 9:13:44 PM GMT- IP address: 170.85.57.16

Document emailed to brian@morpheusdata.com for signature
2024-08-08 - 9:20:25 PM GMT

Email viewed by brian@morpheusdata.com
2024-08-08 - 9:21:19 PM GMT- IP address: 104.28.48.216

Signer brian@morpheusdata.com entered name at signing as Brian Wheeler
2024-08-13 - 9:21:04 PM GMT- IP address: 64.155.0.34

Document e-signed by Brian Wheeler (brian@morpheusdata.com)
Signature Date: 2024-08-13 - 9:21:06 PM GMT - Time Source: server- IP address: 64.155.0.34

Agreement completed.
2024-08-13 - 9:21:06 PM GMT

# Attachment 2

Hewlett Packard Enterprise

# Confidential Information Policy

| | | | |
|---|---|---|---|
| **Organization:** | Office of the General Counsel | **Policy Number:** | HPE010-04 |
| **Sponsor:** | Elana Tyrangiel, Senior Vice President and Chief Ethics and Compliance Officer | **Last Revision:** | **C3** 7-Aug-2025 |
| **Contact:**<br>**Phone:**<br>**E-mail:** | Grant Ritz, Director & AGC, IP Transactions<br>+1 970-214-9511<br>grant.ritz@hpe.com | **First Effective Date:** | 1-Nov-2015 |

## Introduction

Hewlett Packard Enterprise (HPE) (the "Company") information is company property and is vital to our success. All HPE employees and all others who handle information on the company's behalf have a duty to protect it, to keep it confidential, as appropriate, and to use it only for valid business purposes.

HPE information may be disclosed outside the company only by those who are authorized to disclose it and only in compliance with HPE policies. Sensitive or non-public HPE information may be disclosed internally within the company only to those with a business need to know it.

Decisions about whether to accept sensitive information from another company or person outside of HPE must be made with caution and in compliance with HPE policies. Once HPE has received information in confidence from others, the information must be protected and handled in strict accordance with company standards and nondisclosure obligations.

Inappropriate disclosure of the company's sensitive information or improper receipt of nonpublic information from others can weaken our competitive position, jeopardize our Research and Development (R&D), and squander our investments in the processes and resources we have developed for conducting our business.

## Scope

Employees, at every level, must comply with this policy and associated policies and guidelines. Failure to comply is considered misconduct under the HPE Standards of Business Conduct (SBC) and may lead to disciplinary action up to and including termination of employment. Former HPE employees have a legal obligation to continue protecting information after leaving the company. Members of the company's Board of Directors are subject to this policy and to additional guidance relating to their special responsibilities. External temporary workers and contractors are subject to this policy, as appropriate, to their assignments and to the extent they handle information for the company.

## Policy

### Protecting Company Information

All company information, whether sensitive or not, is company property and must be used only for business purposes. You have a duty to safeguard all company information from misuse or inappropriate disclosure outside the company.

The company's most sensitive information – often referred to as trade secrets, confidential information or proprietary information – may include a wide range of nonpublic information, including (but not limited to) Research & Development (R&D), financial, cost and budget data, business plans and strategies, operating reports, manufacturing data, pricing information, product roadmaps, marketing and sales data, supplier and business partner information, information regarding litigation, techniques, formulas, source code, potential acquisitions and equity investments, personnel records and organization charts.

This sensitive information also includes all drafts, documentation, drawings, diagrams, specifications, spreadsheets, reports, e-mails, instant messages, presentations and other materials, whether hard copy or electronic, created during all stages of the development of such information.

- **Categories**. Under the Guidelines for Labeling HPE's Information Assets, there are three standard labels for sensitive information: Private, Confidential, and Internal Use Only. The labels indicate the level of care to be exercised in handling sensitive information, how widely that information can be distributed and in what manner, and how to handle its destruction. Information that does not bear a label should be scrutinized and presumed to be sensitive unless a good reason exists for believing otherwise.
    - The highest level of protection is *Private*, typically applied to data and materials prepared for the company's vice presidents and other top managers. Vice presidents or other functional owners of Private information have certain responsibilities for complying with security for Private information. They may not delegate these responsibilities. They are responsible for loss or mishandling by their personnel. Private information must be handled so as to ensure access only by a list of individuals maintained by the Vice President or other functional owner of the information, e.g., through secure communications and authentication in the case of electronically posted information.
    - Information that is *Confidential* may be shared with limited audiences within the company based on a business need to know and may be shared outside the company by those who are authorized to disclose it and in compliance with company policies. For example, Confidential information is often restricted to some type of group, e.g., to everyone within a department, or a handful of departments. Information that is labeled Confidential must not be posted in plain sight, and this admonition applies to the Intranet or Internet as well. Posted Confidential information must be password protected or otherwise kept in a way that may not be readily accessed by people falling outside of the defined group(s).
    - The basic level of protection is *Internal Use Only*. It is the label for any information intended for widespread distribution within the company, e.g., to everyone within the company's firewall or on any of the company's internal sites. A good example of information receiving this label would be phone information for employees and most organization charts.
- **Labeling.** You should apply the correct restrictive designation to all information that you or your teams create. You should not remove a label from a document or file without consulting those who have a stake in the information.
- **Security.** Appropriate security measures to protect sensitive information from improper disclosure should be taken, in accordance with applicable IT, Security and Legal policies and guidelines. Every employee is responsible for **immediately** notifying the Legal Department if they discover any wrongful acquisition, use or disclosure of sensitive information, threatened wrongful acquisition, use or disclosure, or breach or threatened breach of a confidentiality agreement.

## Using and Disclosing Company Information

You may use company information only for business purposes and disclose it – internally or externally – only for a good business reason and with adequate safeguards. Disclosure includes both written and verbal communication by any channels, including e-mail, social media and the Internet. You need to be careful when discussing sensitive information in places or through channels where others may overhear or intercept it.

- **Protected Disclosures.** Sensitive information may be provided to people *within* HPE only for valid business purposes and in compliance with the Guidelines for Labeling HPE Information Assets. Sensitive information may be provided to a customer, channel partner, supplier, business partner, or anyone else outside the company only when (a) HPE has made a management decision that business needs require you to make such a disclosure, (b) an appropriate written confidential disclosure agreement has been executed, and (c) the identity of the recipient has been validated.

- **Confidential Disclosure Agreements.** Before sharing any company sensitive information with an outside party – in writing or verbally – an appropriate Confidential Disclosure Agreement (CDA), available from Legal, should be properly completed and executed. If an outside party wishes to use its form of agreement in place of HPE's standard CDA, you need to first review it with Legal. Typically, a CDA allows sharing of certain information for very limited purposes, such as disclosing early product information. If the outside party needs more expansive rights (i.e., a license) to use HPE's confidential information, a CDA would not be a sufficient agreement and Legal should be contacted. For example, if HPE wants an outside party to use HPE confidential information for the purpose of development work, a CDA would not be a sufficient agreement and Legal should be contacted.

- **Documenting Disclosure.** When disclosing sensitive information, you should maintain a complete file that includes a copy of the CDA and a record of what was disclosed, to whom it was disclosed, how it was disclosed, and with evidence that HPE properly confirmed to the other party the confidential nature of the information at the time of disclosure. All documents should be properly labeled in compliance with the Guidelines for Labeling HPE Information Assets.

- **Non-Confidential Disclosure**. If an appropriate determination is made that information is not sensitive or has ceased to be sensitive, it may be disclosed on a non-confidential basis in keeping with business needs. It is your responsibility to use good judgment even in disclosing non-confidential information. In addition, bear in mind that non-confidential information may be protected by copyright. See the copyright notices in the HPE Standard 004-0 Legal Notices for Product Documentation, Promotional Materials, and Software and Media.

- **Privacy.** Information belonging to HPE that relates to individuals, including individual customers and employees, must be handled in accordance with the company's privacy policies. Refer to the HPE Privacy Policies.

## Receiving Sensitive Information

Although sometimes there is a business need to receive sensitive information from a company or individual outside HPE, you should be cautious when anyone wishes to share information based on an expectation that the company will hold it in confidence.

Casual acceptance of sensitive information creates a risk that we may be accused of misusing it. It is particularly risky to accept sensitive information regarding potential competitors, because the information received may overlap with ideas we develop on our own and wish to use without restrictions in our activities. In many situations, it is appropriate to suggest to other parties that we will receive only those elements of information that can be shared on a non-confidential basis. A simple written agreement to this effect is recommended and often to our advantage.

- **Information of Others.** You should accept someone's offer to provide written or verbal information that may be sensitive only (a) when a management decision was made that indicates accepting it is necessary and (b) after a written agreement is in place to identify the information, and define and limit our obligations in dealing with it. The agreement should be either the standard CDA or another written agreement that has been reviewed by Legal. You should handle the information in accordance with the signed agreement and use it only for the purposes permitted by the agreement.

- **Documenting Receipt.** When receiving sensitive information from another party, you should maintain a complete file that includes a copy of the confidential disclosure agreement and a

record of what was received, from whom it was received, and what performance obligations the company has with respect to keeping the information confidential.

Our company often accepts sensitive information from customers and business partners based on a commitment that we will use the same degree of care in protecting the information that we use in handling our own information of a similar nature, and no less than a reasonable degree of care. To maintain our reputation and our company's productive relationships with these customers and partners, you must understand any specific commitments the company has made with regard to protecting and using any such information, and you must fulfill those commitments.

- **Unsolicited Suggestions.** We do not accept unsolicited suggestions that the submitter may consider confidential, such as unsolicited ideas for future products. This policy is in place to prevent R&D and other business activities from becoming encumbered by unintended obligations to outsiders. Any recipient of an unsolicited suggestion should promptly contact Legal.
- **Obtaining Information.** Efforts to obtain business intelligence regarding competitors, customers, job applicants, suppliers, and others outside the company must be conducted in compliance with the SBC and the highest standards of ethics.
    - You must respect the obligations of others to maintain the confidentiality of information known to them. Do not induce employees or former employees of other companies to violate their confidentiality obligations to their employers. You must not use information that was improperly obtained or disclose it to other employees, even if you believe it would benefit the business. Refer to the Conflicts of Interest Policy for guidance on the use of third party confidential information obtained by HPE during the performance of a contract.
    - Do not seek to obtain information from anyone outside the company by misrepresenting who you are or why you need the information.
    - You may not seek or obtain "source-selection information" or "contractor bid and proposal information" from government employees or employees of prime contractors in the course of a U.S. federal procurement. Doing so is a violation of the U.S. Procurement Integrity Act. Similar restrictions may apply in procurements conducted by state and local governments, and governments outside of the U.S. Refer to the U.S. Public Sector Procurement Integrity policy for additional information.
    - You must insist that third parties acting on behalf of the company comply with these standards. You may not use consultants, agents, friends or others outside the company to obtain information in ways that would be unacceptable for HPE.

## Communicating with the Public

Your duty is to maintain as confidential all nonpublic company information, and to refer all requests for news and information to the appropriate Corporate Communications spokesperson. Only designated company representatives are authorized to make public any news or information about the company. Improper disclosure of material nonpublic information may subject both the company and the individual making the disclosure to civil and criminal penalties.

- **Financial Information.** Information that can be expected to influence investors or have an impact on the market for our company stock, including forward-looking information such as projections of orders, revenue or earnings, and any information about our performance, such as market strength, product acceptance, and quarter-to-date financial results, may be released only with the approval of designated representatives in Investor Relations, following company guidelines and U.S. securities laws, and after review by Legal. See the Insider Trading Policy or Insider Trading Compliance. Once approved, that information may be released only through designated representatives in Investor Relations or Corporate Communications.

- **Quiet Periods.** We impose a "quiet period" (also referred to as the "blackout" period) each quarter to promote compliance with the U.S. securities laws and the rules of the Securities and Exchange Commission. During the quiet period, which extends from the 15th day of the last calendar month of each fiscal quarter until earnings are released for that quarter, no one may comment upon or respond to queries concerning the company's financial results for that quarter, and you must avoid disclosures that could signal the financial results of that quarter or fuel speculation about those financial results. Refer to the Quiet Period Policy.
- **Press Releases.** Press releases are to be made only through designated representatives in Corporate Communications assigned to a business, operation or function, in compliance with company policy and with review by Legal prior to release. Refer to the detailed information provided in the Regulation Fair Disclosure (FD) Policy.
- **Interviews and Comments.** You may not grant interviews or provide comments to the press without prior approval from Corporate Communications. Unless you receive other guidance from Corporate Communications, you are expected to decline the opportunity to respond to any inquiries for news or information about the company and refer the request to the appropriate company spokesperson.
- **Personal Communications.** You may not create any impression that you are speaking on behalf of the company in any personal communication including online user forums, blogs, social media platforms (for example, Facebook, Twitter, and others), chat rooms and bulletin boards. Employee blogs are subject to the Social Media and Blogging Policy.
- **Completeness and Accuracy of Statements.** All approved statements made to the public on behalf of the company must be complete and understandable, accurate and truthful, timely, and not false or misleading.
- **Technical and Professional Publications and Lectures.** Proposed articles, presentations and scholarly papers developed by employees for technical and professional journals and meetings must be screened to avoid inappropriate disclosures and submitted to management for approval. Refer to the HPE Employee Author Guide.

### Company Resources

The computers, communication systems, mobile devices, and other equipment and materials provided to you by HPE are company property, intended for company business. You are responsible for safeguarding the integrity of the company's systems. For example, you must not expose them to computer viruses or enable a breach of the security firewall. You may not use company resources to infringe the copyright or other intellectual property rights of any third party (for example, in digital music or video files, MP3s, or other similar material).

In order to identify personal activity, HPE may access and inspect all company resources that you use, including computers, servers and systems, external storage devices, telephones, voicemail systems, desks, lockers, cabinets, vehicles and other equipment belonging to the company. You should not have any expectation of personal privacy in any messages or records created or transmitted by company systems, including electronic documents, e-mail, and voicemail, regardless of personal passwords or filing systems.

Refer to the Conflicts of Interest Policy (Use of HPE Resources) and the IT policies.

## References

Standards of Business Conduct

HPE Global Master Records and Information Management Policy

Guidelines for Labeling HPE Information Assets

HPE Standard 004-0 Legal Notices for Product Documentation, Promotional Materials, and Software and Media

HPE  Privacy Policies

Legal Confidential Disclosure Agreement (CDA) Portal

Insider Trading Policy

Insider Trading Compliance

Quiet Period Policy

Regulation Fair Disclosure (FD) Policy

Social Media and Blogging Policy

HPE Author's Guide for Employees

Conflicts of Interest Policy

IT policies

## Revision History

| Revision | Description of Change |
|---|---|
| A, 1-Nov-2015 | Initial release of policy for Hewlett Packard Enterprise. |
| A1, 18-May-2017 | Changed Contact person |
| B,27-Aug-2018 | Broken links updated and clause updated in - Confidential Disclosure Agreements in pg 3 |
| C, 23-Sep-2021 | Updated the broken links and removed the point - Competitive Market Knowledge Board |
| C1, 13-Apr-2023 | Changed the sponsor name and corrected the broken links |
| C2, 1-Dec-2023 | Changed Contact |
| C3, 7-Aug-2025 | Updated and fixed hyperlinks; added example to CDA section. |

# Attachment 3




# HPE Standards of Business Conduct

We win the right way, everyday.

This printable copy of our Standards of Business Conduct does not offer the full functionality of our online version. Please visit our website to access our online tools, multimedia content, and links to related policies.

Hewlett Packard Enterprise

# Table of contents


3 Introduction

4 Message from our Chief Ethics and Compliance Officer

5 We win the right way

7 We are an ethical company

9 We promote a harassment-free work environment and we do not discriminate

10 We maintain accurate business records

12 We follow the rules that apply to gifts, meals, travel, and entertainment

16 We protect our cyber security

17 We avoid conflicts of interest

19 We safeguard HPE assets and worksites

21 We comply with the rules that govern our business

23 We work with third parties responsibly



# At Hewlett Packard Enterprise, how we do things is just as important as what we do.

The HPE Standards of Business Conduct governs our business practices and provides guidance for ethical decision-making. When following these standards, our collective conduct helps us achieve more as a team, and builds trust with our suppliers, partners, and customers.

We aspire to ethical leadership, and we pride ourselves on winning the right way.

Together, let's uphold our commitment to ethical behavior by acting with uncompromising integrity and respect every day.




## How to report concerns

**Corporate.compliance.hpe@hpe.com**

**Ethics Hotline – Phone or Web**

- Anonymous reporting possible wherever local law allows
- Translation services available
- Operators available 24/7

**Hewlett Packard Enterprise**

Attention: Ethics and Compliance Office
1701 E. Mossy Oaks Rd.
Spring, TX 77389-1767, USA



# Message from our Chief Ethics and Compliance Officer

At HPE, our ethical conduct is a top priority. We act with honesty, integrity and respect, even as we compete to win.

Our Standards of Business Conduct provides guidance for HPE employees across the globe: we are all bound by its rules, and we are all responsible for upholding its values. Read the Standards of Business Conduct, understand it, and when faced with tough situations, consult it for guidance. When you are unsure, reach out – to my team, to your leaders, or Human Resources – and ask for help.

Finally, if you have concerns about conduct you see or hear about, please raise them through one of our many reporting channels. We take allegations seriously. We hold people accountable when we find misconduct. And we never tolerate retaliation against employees who speak up honestly and in good faith.

Thank you for helping HPE win the right way.

**Elana Tyrangiel**





# We win the right way

At HPE, we aspire to ethical leadership. We want to win the right way, every day. How do we live up to that aspiration?

- We make ethical decisions.
- We report misconduct, and we never retaliate.
- And we cooperate with investigations and audits when we are called upon to do so.

Our collective good conduct and decision-making is important. When we act with integrity, we work better together and build trust with our suppliers, partners, and customers.

To that end, our Standards of Business Conduct provides guidance for all HPE employees and for members of HPE's Board of Directors. Everyone must follow the rules articulated here and in the underlying policies referenced here. And because we take our commitment to ethical behavior seriously, violations of these rules can lead to disciplinary sanctions, including termination of employment.

## Your obligations



### Act ethically

**As an HPE employee, you must conduct yourself with integrity and make ethical decisions.**

As part of this obligation, you must abide by the SBC, HPE policies, and the law.

Often, reaching the right decision will be obvious. But occasionally, you will encounter circumstances where the right decision will not be immediately clear.

In these circumstances, we encourage you to consult the SBC for guidance. Take the headline test below to assess the soundness and potential consequences of your decisions. And reach out to your HPE colleagues for help: your manager, your peers, your local SBC team, or the Ethics and Compliance Office will be glad to engage to ensure we win the right way.



### Report concerns and do not retaliate

**Every employee has a responsibility to report misconduct promptly.**

If you are aware of misconduct, use the Open Door Policy to raise concerns with your manager, HR, your local SBC team, or the Ethics and Compliance Office.

**And we do not tolerate retaliation.**

HPE does not tolerate retaliation against anyone who raises a concern honestly and in good faith.

**What do we expect from managers?**

Managers must demonstrate ethical leadership and cultivate a work environment that promotes integrity, trust, and respect. Managers must provide proper guidance to employees and take appropriate action to prevent, detect, and respond to misconduct. And managers must encourage open and honest communication, and ensure that employees can ask questions or raise concerns without fear of retaliation.

**Do I need to report misconduct that was committed by a supplier, partner, or customer?**

Yes. If you are aware of misconduct, even if the action was taken by a supplier, partner, or customer, rather than an employee, you still must report it.

## Related content

- Global Open Door Policy
- Investigations FAQ

**Related SBC content**

- We are an ethical company



## Cooperate with investigations and audits

You must cooperate fully with any internal investigation or audit. And you must work with the Office of Legal and Administrative Affairs to respond to litigation or requests from the government or other external agencies.

You may never alter or destroy records in response to litigation, an investigation, or an audit (whether ongoing or anticipated). And you may not discuss an internal investigation with anyone – whether inside or outside the company – unless the internal investigators have permitted you to do so, or you are communicating with government agencies in compliance with the law.

For more information, consult our Litigations and Investigations Policy.

---

## Unsure about a decision or action? Use the Headline Test.





# We are an ethical company

HPE conducts business ethically – in all of the cultures and countries in which it operates – and with trust, respect, and integrity. All HPE employees must support this mission by abiding by the following principles:

## We follow the law

**We follow the law everywhere we do business.**

This is a fundamental tenet of good corporate citizenship and an essential ingredient in building trust with the governments, partners, customers, and suppliers with whom we work across the world.

As HPE employees, you are responsible for embodying HPE's commitment to legal conduct. The topics below are some of the areas with which you need to familiarize yourself. Other legal compliance issues are covered elsewhere in this Code. Yet other areas will undoubtedly surface depending on your job role. In all instances, you must follow the law.

**We do not bribe or accept kickbacks**

You may never provide, offer, or accept bribes or other improper payments or inducements to win business. And you may not do so to improperly influence a business decision either. These rules apply to everyone, every day, even if it means losing business in the short-term.

- **Q: How might a problem arise?**

  Whenever we give or receive anything of value, we need to ensure that we do so appropriately, and without creating even an appearance of impropriety.

  For more information related to this topic, consult the sections on Gifts, Meals, Travel, and Entertainment and Third Parties.

- **Q: What are common third party red flags?**

  Certain behaviors or patterns may indicate improper conduct. You may never look the other way. Contact your manager or the Ethics and Compliance Office if you spot any of the following red flags:

  - Requests by an agent for payments in a different country, to a third party, or in cash
  - Directions from a government official that a particular agent is to facilitate a transaction, or where a close personal relationship exists between an agent and a government official
  - An agent who has a reputation for making prohibited payments
  - An agent who requests fees higher than the market rate without reasonable explanation
  - An agent who objects to HPE efforts to perform due diligence

**We engage in vigorous market-based competition**

We compete on the merits of our products and services.

- We do not engage in anticompetitive behavior such as bid rigging, collusion, setting prices, limiting production, or dividing up customers, suppliers, or markets.
- And we do not improperly obtain or retain business intelligence regarding our competitors, customers, suppliers, or others outside of HPE for any reason.

- **Q: One of my customers sent me an email containing a competitor's pricing information. What should I do?**
  - Do not share the document with anyone, and delete the email immediately. Then, consult your HPE lawyer. You may need to be fire-walled from the bid process.

- **Q: I kept some confidential materials from my last technology job. Can I use those here at HPE?**
  - No. We do not obtain, retain, or use business intelligence in this manner, and any such use is unacceptable.

**We do not trade on material non-public information**

As an HPE employee, you must refrain from buying or selling HPE securities if you are aware of material non-public information (MNPI). Similarly, you cannot make recommendations to others about trading HPE securities under these circumstances.

This is also true if you learn MNPI about another company (such as an HPE customer, supplier, or business partner during the course of your job.

**Related content**

> Anti-Corruption Policy

> Competitive Market Knowledge Board

> Global Best Work Environment Policy

> Insider Trading Compliance

- **Q: What constitutes MNPI?**
  - Information on mergers and acquisitions
  - Customer or supplier news
  - New products or discoveries
  - Any information an investor might consider relevant

- **Q: Why is this important?**

  Insider trading is a serious violation of U.S. law and can subject individuals – whether they trade themselves or make recommendations to others who trade – to civil and criminal sanctions, including severe financial penalties and even jail time.

  Make sure you know all the rules by consulting HPE's Insider Trading Policy.

## We are honest

As an HPE employee, you have an obligation to be honest and ethical in your dealings.

This obligation extends to every aspect of your conduct as an HPE employee, whether you are, among other things:

- communicating with investors, auditors, analysts, governments, media, investigators, customers, or company management;
- creating or maintaining financial records;
- securing our data or physical security; or
- using HPE facilities or assets.

Regardless of the situation, you may never engage in any fraudulent conduct or behavior. You should act with uncompromising integrity every day.

## We treat each other with respect

Respect is fundamental to our ethical culture. Our workplace is an inclusive environment that embraces diverse backgrounds and opinions.

You should treat your fellow employees with fairness and dignity, and expect the same in return.

Please report any concerns to your manager, HR, or the Ethics and Compliance Office.



**Related content**

- Global Harassment-Free Work Environment Policy
- Global Non-Discrimination policy

**Related SBC content**

- We are an ethical company

# We promote a harassment-free work environment and we do not discriminate

Our work together depends upon trust and respect. We do not tolerate harassment or discrimination.



## We promote a harassment-free work environment

HPE will not tolerate harassment of any kind, including offensive verbal, physical, or visual behavior or actions directed toward an individual.

Any form of harassment – whether on site, in person, on the phone, through email, or other virtual channels – is unacceptable and subject to disciplinary action.

We also refuse to tolerate sexual harassment, including unwelcome sexual advances, requests for sexual favors, or the physical or computer-image display of sexually explicit posters, pictures, cartoons, or drawings, and other verbal or physical conduct of a sexual nature.

Employees should promptly report any instance of harassment to their manager, the next level of management, Human Resources, or the Ethics and Compliance Office.

For additional guidance, consult our Global Harassment-Free Work Environment Policy.



## We do not discriminate

We do not discriminate against any employee based on their gender, color, race, ethnicity, national origin, religion, age, marital status, sexual orientation, gender identity and expression, disability, pregnancy, covered veteran status, protected genetic information, or political affiliation. Any form of discrimination is unacceptable and subject to disciplinary action.

Employees should promptly report any instance of discrimination to their manager, the next level of management, Human Resources, or the Ethics and Compliance Office.

For additional guidance, consult our Global Non-Discrimination Policy.



# We maintain accurate business records

We are ethically and legally obligated to maintain complete, truthful, and accurate business records. These rules are important because a true accounting of HPE assets and transactions facilitates good business decision-making and gives investors an accurate sense of the company's position. Keeping accurate books and records is therefore a key component of ethical business conduct and a legal requirement.



### HPE's books and records must account for all of HPE's assets.

**No off-book funds**

Off-book funds are any pool of company assets that are not adequately reflected in our books and records. You may not create an off-book fund, even if you intend to use it for otherwise legitimate business purposes. Off-book funds expose the company to legal liability, and expose you to disciplinary sanctions up to and including termination.

- **Q: What does an off-book fund look like?**

If you . . .

- Ask a vendor to hold onto extra money from a completed project so you can save it for a later project that isn't properly documented, you've created an off-book fund.
- Give a partner some extra discounts on a deal so you can ask that partner to fund a customer event or business travel expenses later, you've created an off-book fund.
- Pay a vendor in return for credit for unspecified work in order to avoid losing your remaining budget for the quarter, you've created an off-book fund.

For additional guidance, consult HPE's Accounting and Finance Manual.



### HPE's books and records must account for all of HPE's transactions.

**No side agreements**

- **Q: What are side agreements?**

Side agreements are promises made without appropriate approval and/or documentation pursuant to HPE policy. These promises can add to or change the terms of existing contracts. And they can be memorialized in a document or an email, or informally, during a phone conversation. No matter what form they take, these agreements are prohibited.

- **Q: What does a side agreement look like?**

- Offering unauthorized discounts in exchange for invoice approval on incomplete work
- Agreeing, without proper authorization or documentation, to repurchase a partner's unsold inventory after a certain period of time
- Allowing a partner to accept delivery with a promise or understanding that the partner can return if the partner is unable to find an end-user
- Promises to pay fees or commissions to unapproved third parties
- Modifying price determinations on an existing contract without proper approval

## Related content

- Accounting and Finance Manual
- Employee Expense Management

**Related SBC content**

- We work responsibly with Third Parties



## The nature and timing of these transactions must be documented accurately.

### Recognize revenue appropriately

- **Q: What is revenue recognition?**

Revenue recognition refers to the realized earnings that are reported in our books and records, and subsequently to investors and government regulators. Revenue may only be recognized on HPE's books and records after certain criteria are met.

- **Q: How might a problem arise?**

If we record transactions that never took place, the revenue is considered fraudulent. Similarly, if we record the timing of a transaction inaccurately, the revenue is accelerated. Improper revenue recognition in either case involves creating false records or entering into side agreements – both of which are prohibited.

Examples include:

- Creating fictitious purchase orders
- Generating false invoices
- Offering unauthorized rebates or discounts
- Parking goods with a partner until an end-user buyer is identified

- **Q: Why is revenue recognition a risk?**

HPE is liable for reporting our earnings accurately and transparently. Improper revenue recognition exposes HPE to severe financial penalties, legal consequences, and may affect our company's reputation or stock prices.





### Ask the right questions

Before providing an amenity, ask yourself the following questions:

***Is the recipient commercial, U.S. public sector, or non-U.S. public sector?***

Different rules apply: for commercial and non-U.S. public sector rules, consult the appropriate sections of the Global Business Amenities Policy (GBAP); for U.S. public sector rules, consult the U.S. Business Amenities Policy (USBAP).

***Does giving this amenity violate the headline test or create an appearance of impropriety?***

If so, stop. You may not provide the amenity in these circumstances.

***Does the amenity violate any country-specific laws?***

Some countries have specific rules. Make sure you consult the correct section of the applicable policy to ensure you apply the right rules. (For the GBAP, a country-by-country list appears at the end.)

***Do I need to obtain approvals?***

Depending on the type of amenity, its value, and the recipient, you may need to secure pre-approval. Consult our policy, and if necessary, use the Amenities Approval Tool.

# We follow the rules that apply to gifts, meals, travel, and entertainment

Gifts, meals, travel, and entertainment constitute items of value that we may give to third parties only in appropriate circumstances. You need to take the utmost care when you are contemplating giving anything to a third party.

Never give anything to anyone in circumstances that could improperly influence business decisions, or even create the appearance of improper influence. And always ensure your actions pass the headline test.

## Five things you need to know

**Q: What is a business amenity?**

A business amenity is:

- any item of value
- given or received by an HPE employee

Items of value include meals, gifts, travel, and entertainment. Amenities also include anything of value given by a third party on our behalf. Consult our Third Parties section for additional considerations.

**Q: Are there limits on what I can provide to a customer, partner, or other person on behalf of HPE?**

Yes. HPE has restrictions on what may be provided to our customers, partners, or other third parties based on the type and value of the amenity, as well as the recipient's role and location. Some amenities require pre-approval. In those instances, you must submit a request to the Amenities Approval Tool.

For more information on these rules, consult the Global Business Amenities Policy (or for USPS-related matters, the U.S. Business Amenities Policy).

## Related content


- Amenities Approval Tool
- Amenities Approval Tool FAQ
- GBAP Country-Specific Rules
- Global Business Amenities Policy FAQ
- Global Business Amenities Policy (GBAP)
- Global Travel Policy
- HPE Meeting and Events Policy
- U.S. Business Amenities Policy


## Q: Are there items of value I can never give or receive?

Yes. The following items are never permitted:

- Cash, Visa or Amex gift cards, gold, or expensive jewelry
- Any item that is illegal, sexually explicit, or involves gambling
- Any gifts exchanged during a competitive bid process or contract negotiation
- Any gifts to or from the family members, close friends, or business associates of a third party
- Any gift that violates the recipient's gift policies

## Q: When do I need to use the Amenities Approval Tool?

You must seek pre-approval through the Amenities Approval Tool anytime you are planning on:

- Holding an event
- Providing anything to public sector employees (both U.S. and non-U.S.)
- Conducting a raffle
- Providing any gifts, meals, entertainment, and/or travel valued at $500USD or more to commercial sector recipients
- Receiving from third parties any gift, meal, entertainment, and/or travel valued at $500USD or more

## Q: What are the rules for events?

Whenever you plan to host or co-host an event, you need to obtain pre-approval using the Amenities Approval Tool. Any gifts, meals, travel, and entertainment provided in association with the event must be included in the request submitted to the Amenities Approval Tool. For more information on events, consult the Global Business Amenities Policy.



# We protect our cyber security

As HPE employees, we are the first line of defense against security breaches and inappropriate disclosure of critical information.

A breach of our information systems can harm individuals and weaken our competitive position.

You must do your part by maintaining the integrity of HPE's information systems and reporting any issues of concern immediately.

---

## Protect HPE's information systems

All HPE information systems have technical safeguards in place to protect against cyber-attacks. But HPE depends on you to maintain the integrity of HPE computers and network resources. Whenever you access the internet, email, SharePoint, or any other software application – whether from an HPE computer or your own mobile device – you may never deliberately disable, modify, or bypass required security software or settings.

## Maintain good security habits

Your good security habits are just as important as the technical safeguards we have built into our systems:

- Protect your HPE passwords and do not share them with anyone
- Connect to our secure network using HPE WiFi or a VPN
- Ensure that your laptop is encrypted
- Never store HPE information on personal or shared systems
- Verify links and attachments before opening them
- Lock your workstation whenever you step away from your laptop

All HPE employees must complete the Cyber Security Annual Training. The training explores the security risks you may encounter and provides guidance on handling these risks.

For more information, please visit Cyber Security.

### Reporting data security incidents

Data security breaches can have a direct impact on our employees and our business. If you become aware of a cybersecurity risk, you must report it immediately so we can take appropriate action.

**If you receive a . . .**

- **Suspicious call** that attempts to get system/network access information, email soc@hpe.com.
- **Phishing email:**
  1. Do not open the suspicious message. If you accidentally open it, do not click any links or open any attachments.
  2. Forward the suspicious email as an attachment in a new email message to phishing@hpe.com.
  3. Delete the message from your Inbox and your Deleted Items folder.

For any other threat or incident encountered on an HPE application, system, or network, email soc@hpe.com immediately **and** call 1-877-762-6139 to limit the potential spread and impact.

### Why is cybersecurity critically important?

Cyber criminals often target individuals to gain access to networks, steal proprietary information, and/or obtain customer information. Your cyber awareness helps protect HPE and its reputation.

### Related content


› Cyber Security Connect Now page

› Cyber Security Polices

› Cyber Security Tips and Training

**Related SBC content**

› We work responsibly with Third Parties



# We avoid conflicts of interest

A conflict of interest can exist in any situation where loyalties may be divided between our company's interests and our own, or between HPE's interests and those of anyone outside HPE. Be sure to make decisions in the best interests of HPE.

Most conflicts of interest can be avoided by following the rules in HPE's Conflicts of Interest Policy.

We are all responsible for using good judgment to evaluate activities that may result in a conflict of interest, along with asking questions and sharing with managers any concerns about potential conflicts.

---



### Outside Employment

**You may not engage in outside employment activities if doing so will negatively impact the work you do at HPE.**

Some activities are never permitted: for example, you may never work for an HPE competitor.

Other activities – like outside opportunities with our partners, suppliers, or customers – may be permissible in some instances, but only with proper approval.

Bear in mind that even the appearance of a conflict can be problematic. Consider whether your outside activities would lead others to question your judgement, decisions, or actions in your role at HPE. And consult the policy to make sure you follow the rules.

- **Q: What is an outside employment activity?**

  Outside employment means any position you hold – whether as an employee, consultant, contractor, or owner – in addition to your job at HPE.

  Examples include:

  - Part-time job at a local coffee shop
  - Service on the advisory board of an HPE customer
  - Consulting services provided to a friend's business

- **Q: Does the policy apply to volunteer activities and/or board service?**

  Yes. Our policy addresses these kinds of outside activities too. Check out the specific rules here.




### Financial Interests

You may never hold personal or family financial interest in an HPE customer, reseller, supplier, partner, or competitor if those financial interests would improperly influence your judgment and actions at HPE. Indeed, these interests are forbidden even if they create an *appearance* of improper influence.

Financial interests include investment, ownership, creditor interests, or any other financial arrangement that provides a share of profits or revenues. This includes founder's stock in any company with which you deal on HPE's behalf.

Consult the policy for more on financial interests in other businesses.

## Related content

- COI Frequently Asked Questions
- Global Volunteer Policy
- Service by HPE Employees as a Director or Officer of non-HPE Company
- U.S. Public Sector Organizational Conflict of Interest (OCI) policy

## Personal relationships

If you and a family member – or other individual with whom you have a romantic or other close personal relationship – are employed at HPE, you may not:

- Report to one another, either directly or indirectly; or
- Be involved in the other's employment-related decisions, such as hiring, performance reviews, or recommendations for promotions.

If you have personal relationships with individuals who work for an HPE business partner or competitor, or who serve as a government official involved with HPE business, you should consult our policy to ensure you follow the rules. Note that even the appearance of an improper relationship may create a conflict for HPE.

- **Q: What do I do if a conflict of interest arises?**

  If you find yourself in one of the above situations due to organizational changes or other circumstances, you must promptly disclose in writing the situation to your manager and director.

  Consult the policy for more on potential conflicts of interest that may arise from your personal relationships.

## Use of HPE resources

HPE provides computers, email and phone systems, and other resources for employees to conduct HPE business. Personal use must be infrequent and kept to a minimum. And you may not use HPE resources to conduct outside employment or volunteer activities.

Consult the policy for more on the use of HPE resources.





# We safeguard HPE assets and worksites

Whenever you are conducting HPE business, you use HPE's assets. These assets are valuable to HPE and our work together, and they require protection.

As HPE employees, you are expected to safeguard the integrity of our sensitive and confidential information, and our intellectual property, by taking appropriate steps to avoid unauthorized disclosure. You also must use HPE's physical property wisely and ethically. And finally, you must abide by rules designed to keep our workplaces safe and secure.

In all cases, you should take the time to consider how your decisions will impact you, your colleagues, your work environment, and HPE's reputation.

## Confidential and sensitive information

You may use and disclose sensitive HPE, customer, business partner, or supplier information only for legitimate business purposes, and only when appropriate protections are in place (click here to learn more about such protections).

Remember that disclosure can occur not only via formal or written communications, but also through casual conversations, email, or social media.

- **Q: What are some examples of confidential and/or sensitive information?**
  - research and development
  - financial, cost, and budget data
  - business plans and strategies
  - pricing information
  - product roadmaps
  - marketing and sales data
  - supplier and business partner information
  - intellectual property, including HPE patents, trademarks, copyrights, trade secrets, and technical designs
  - information regarding litigation, potential acquisitions, or equity investments
  - personnel records and organizational charts

  For more information, consult our Confidential Information Policy.

## Property

HPE provides computers, communication systems, software, and other resources for employees to use as they conduct company business. Incidental personal use should be kept to a minimum – meaning that the use is infrequent, does not create a conflict with your job, and does not violate any laws or HPE policies.

- **Q: Can I use my HPE email address to promote my charity's fundraiser?**

  HPE encourages personal involvement in charitable, educational, and other community organizations. But if the fundraiser does not have any connection to an HPE-sponsored event, you may not use HPE resources for activity associated with the fundraiser or charity.

  For more information on the use of HPE resources, read our Conflicts of Interest Policy.

**Related content**

- External Communications and Endorsements Principles
- Global Real Estate
- Global Security Operations
- Guidelines for Labeling Information Assets
- Social Media and Blogging Policy

## HPE worksites

HPE is committed to maintaining a safe and secure workplace. We therefore all must comply with safety, health, and security policies and procedures.

As HPE employees, you may not engage in any behavior or activity that creates a safety risk through intoxication, drug use, or the possession of any weaponry while on HPE property or while conducting HPE business.

For additional guidance:

- Environmental Health and Safety Policy
- Global Security Standards





# We comply with the rules that govern our business

Other sections of this Code incorporate your general legal and ethical obligations as HPE employees.

This section addresses several specialized compliance frameworks. You need to be familiar with these areas to ensure that HPE abides by the law wherever we do business.



## Global Trade

**We comply with international trade laws and regulations**

As HPE employees, we have an obligation to ensure HPE complies with international trade laws and regulations, including customs and import rules, export controls, sanctions, embargos, and immigration laws.

These obligations include:

- Assigning the appropriate import/export classifications to our products and services
- Screening all customers and business partners before we do business with them
- Conducting necessary due diligence to ensure the products and services we provide are used legally and ethically
- Obtaining and maintaining appropriate import, export, and customs records and controls.

You may never intentionally circumvent our Global Trade policies. For more information on international trade compliance, please review our Global Trade Policies or contact Global Trade.



## Supply Chain

**We work with responsible partners and suppliers**

We build trust with our customers, partners, and suppliers by acting as good corporate citizens, and we expect the same from those in our supply chain. If you learn that a supplier is violating the law or our standards on human rights, foreign migrant workers, or environmental health and safety, you must notify the Ethics and Compliance Office promptly.

For more information on HPE's Supplier Social and Environmental Responsibility requirements, please see HPE's Supplier Code of Conduct, General Specifications for the Environment, Global Human Rights Policy, and Supply Chain Social and Environmental Responsibility Policy.



## Privacy

**We respect privacy and protect personal data**

As HPE employees, you may only obtain and use the personal data of customers, partners, or fellow employees for legitimate business purposes, and with appropriate protections in place.

- **Q: What is personal data?**

  Any information relating to a specific identified or identifiable individual is considered personal data. Personal data includes an individual's name, email address, identification number, location data, online identifiers, or any factor related to the individual's physical, physiological, genetic, mental, economic, cultural, or social identity.

- **Q: Is HPE compliant with the EU General Data Protection Regulation (GDPR)?**

  Yes. The Privacy Office has implemented a GDPR compliance program across HPE to meet the law's requirements.

## Related content

- General Data Protection Regulation
- General Data Protection Regulation - HPE Employee Training
- Global Trade Policies
- Global Trade Training
- Global Supply Chain
- HPE Political Action Committee
- Privacy Office
- Privacy Policies
- Reporting of Lobbying Activities

- **Q: How do I handle a Data Subject Rights Request?**

  HPE honors the exercise of individuals' data subject rights. Contact the Privacy Office for guidance.

  For more information on the GDPR and HPE's Privacy policies, visit the GDPR homepage.



## Political contributions

**Special rules apply to political contributions**

HPE makes U.S. political contributions to state and local candidates as allowed by U.S. law and HPE policies. The HPE Political Action Committee (PAC) may also provide political contributions to federal political candidates. Neither HPE nor its PAC provides political contributions that could create even the appearance of improper influence.

HPE employees may make personal contributions to U.S. government candidates, but you may not seek reimbursement from HPE or use HPE funds to do so. Nor should your contributions create the impression that you are speaking or acting on behalf of HPE.

If you are a VP or higher, or if you work on U.S. public sector contracts, you may need to seek approval before making personal political contributions. For more information on approvals, please consult the Political Contributions to U.S. State and Local Government Candidates and the Political Participation Policy.





**Why do I need to be mindful of third parties?**

The third parties with whom we work represent us. We work hard to win the right way and hold our partners to this standard too. In addition, in certain circumstances, HPE may be held responsible for third party misconduct.

# We work with third parties responsibly

In other sections of this Code, we address our expectations for your behavior as an HPE employee.

Because HPE regularly engages with third party partners – including channel partners, suppliers, and vendors – and because we expect our third party partners to win the right way too, you must be able to recognize potential misconduct. You must act to address and report promptly any concerns.




**You may never use a third party to do something that you yourself are prohibited from doing.**

## Privacy

We are responsible for third parties' use of HPE data. Indeed, whenever we share or provide access to data that belongs to HPE, we must ensure there are appropriate protections in place.

Similarly, HPE protects the personal information of our business partners, suppliers, vendors, and other third parties. You may only obtain and use the personal data of third parties for legitimate business purposes, and with appropriate protections in place.

For more information, visit the Privacy section.

## Conflicts of Interest

HPE engages third parties based on the merits of their services and business practices, not based on family connections, personal financial interests, or other inappropriate considerations. You should be mindful of any potential conflicts of interest, including those that might arise between our third party partners and our customers.

- **Q: How might a conflict arise?**

For example, if a government official requires HPE to use a specific third party, the official may have an improper arrangement with the third party. If you discover a conflict of interest like this or any other in your dealings with a third party, you must address it.

For more information, consult the Conflicts of Interest section, or read our Conflicts of Interest Policy.

## Bribery and Corruption

We don't allow third parties to bribe on our behalf. And we don't want to associate ourselves with anyone who bribes for any purpose. This is true even if it means losing business in the short term.

**Please be on the look-out for indicators of bad behavior by third parties acting on our behalf. Contact your manager or the Ethics and Compliance Office if you spot any of the following red flags:**

- Requests for excessive compensation, discounts, fees, or commissions
- Requests for unusual payment arrangements, like payment in a different name or unrelated country
- Requests to add multiple additional subcontractors without clear business justification
- Requests for, or offers of, cash or favors

For more information, consult our Anti-Corruption Policy.

## Books and records

Our books and records must accurately detail and fairly represent what we do with HPE resources, including transactions with our third party partners. A third party may ask you to create an off- book fund by:

- Providing undocumented discounts or payments;
- Directing funds to a third party without appropriate authorization; or
- Directing funds to their account without a legitimate business purpose.

This request is unacceptable, and you must report it to the Ethics and Compliance Office.

## Market development funds

HPE allocates marketing funds to authorized partners to subsidize the costs of marketing or sales activities that promote HPE's brand. If a partner requests reimbursement for market development funds (MDF), the funds must be used for an approved and legitimate business purpose, and they must be accurately represented in our records.

To these ends, a partner may not hold MDF in an off-book fund. And for amenities provided to a partner using MDF, you must follow the rules and approval requirements in the Global Business Amenities Policy.

For more information, consult the following resources:

- MDF Supplemental Guidance and Compliance Considerations
- MDF Activity Matrix
- MDF Management Policy

## Human rights

At HPE, we support and respect human rights and ensure that our business partners and suppliers do the same. We avoid complicity in human rights violations that could arise through our business actions.

We take steps to ensure that child labor, prison or forced labor, and physical punishment are never permitted in any of HPE's operations, or those of our business partners or suppliers.

You must promptly report any allegation of human rights violations.

For additional guidance, consult our Global Human Rights Policy.

## Brand Security

You must follow marketing and sales policies and use due diligence to prevent situations that may lead to the gray marketing of HPE products.

### Related content


> Anti-Corruption Red Flags

> Mandatory Onboarding Programs for Third Parties

> Global Brand Security

## How to report concerns

**Corporate.compliance.hpe@hpe.com**

**Ethics Hotline – Phone or Web**

- Anonymous reporting possible wherever local law allows
- Translation services available
- Operators available 24/7

**Hewlett Packard Enterprise**

Attention: Ethics and Compliance Office
1701 E. Mossy Oaks Rd.
Spring, TX 77389-1767, USA



Hewlett Packard Enterprise

© Copyright 2019 Hewlett Packard Enterprise Development LP. The information contained herein is subject to change without notice. The only warranties for Hewlett Packard Enterprise products and services are set forth in the express warranty statements accompanying such products and services. Nothing herein should be construed as constituting an additional warranty. Hewlett Packard Enterprise shall not be liable for technical or editorial errors or omissions contained herein.